[Civ. No. 16344. Fourth Dist., Div. One. Mar. 27, 1979.]

WALTER F. KERRIGAN, Plaintiff and Appellant, v.
FAIR EMPLOYMENT PRACTICE COMMISSION,
Defendant and Respondent;
CITY OF SAN DIEGO, Real Party in Interest and Respondent.

## COUNSEL

Walter F. Kerrigan, in pro. per., for Plaintiff and Appellant.

Evelle J. Younger and George Deukmejian, Attorneys General, Sanford N. Gruskin, Chief Assistant Attorney General, Warren J. Abbott, Assistant Attorney General, Hadassa K. Gilbert and Katherine E. Stone, Deputy Attorneys General, for Defendant and Respondent.

John W. Witt, City Attorney, and C. M. Fitzpatrick, Deputy City Attorney, for Real Party in Interest and Respondent.

## OPINION

**STANIFORTH, J.**—After practicing law in the Midwest for 20 years, Walter F. Kerrigan moved to California in 1971, passed the attorneys' bar in 1973, and soon thereafter applied for a beginning position in the criminal division of the San Diego City Attorney's office. Of the many applicants interviewed, five young attorneys were hired, but 55-year-old Kerrigan was not. Believing he was rejected as too old for the job, Kerrigan promptly filed a complaint with the California Fair Employment Practices Commission (FEPC) alleging the city attorney had violated Labor Code section 1420.1, subdivision (a), by denying him employment "solely on the ground of age." The FEPC made an investigation, then filed a formal accusation against the city attorney, but upon full hearing, denied Kerrigan's claim finding there was no violation of section 1420.1, subdivision (a). Kerrigan next sought a writ of mandate in the superior court to compel the FEPC to set aside its decision. Upon hearing and review of the transcript of the administrative hearing and the exhibits, the court denied Kerrigan relief. The court, in its letter opinion, found the evidence sufficient to support the FEPC decision under *both* the substantial evidence and the independent judgment tests. The court however made no written findings of fact. Findings were not required for no request was filed. (Code Civ. Proc., § 632, subd. (1).)

On appeal Kerrigan contends the evidence does not support the findings or the decision under *either* test. He maintains the city's own statistics established a prima facie violation of Labor Code section 1420.1, subdivision (a), which the city failed to rebut and that testimony at the hearing disclosed a violation of section 1420, subdivision (e), as well. For the first time on appeal he complains the FEPC violated its own procedural rules by failing to inform him of his right to judicial review.

To say that Kerrigan was qualified for the entry-level position for which he applied is to emphasize the obvious. He holds B.S. and J.D. degrees from the University of Indiana as well as an LL.M. degree, served as a Coast Guard officer during World War II, and for 20 years practiced law in the Chicago area. During this period he represented savings and loan associations and gained experience both in office practice and in court in the fields of real estate, bankruptcy, securities, domestic relations, and appeals. He also served as an arbitrator in uninsured motorist matters and had quasi-criminal trial experience in connection with building violations. He has been licensed to practice law in Illinois since 1951 and in Indiana since 1942.

In 1971 Kerrigan moved to California and in 1973 passed the attorneys' bar and was admitted to practice here. Unable to find employment in the area of his experience or in the district attorney's office, Kerrigan finally applied for one of several openings in the city attorney's office in August 1973.

The employment brochure he was given set out the organization and operation of the office, explained its intern program and said it was traditional to start all incoming attorneys in the criminal division, which prosecutes only misdemeanors. The starting pay was then $1085 per month for attorneys and $713 per month for senior interns awaiting bar results. According to the brochure, "The San Diego City Attorney's office hires and advances prospective and current attorneys without regard to age, sex, race, religion or national origin." One section named the entire legal staff and gave statistics on their ages, marital status, and educational backgrounds. The statistical section began as follows:

"AGES:
MEDIANS:

| OFFICE | CIVIL DIVISION | CRIMINAL DIVISION |
|--------|----------------|-------------------|
| 31 | 32 | 29 |

MEANS:

| OFFICE | CIVIL DIVISION | CRIMINAL DIVISION |
|--------|----------------|-------------------|
| 32 | 35 | 30" |

Not deterred by the brochure, 55-year-old Kerrigan submitted his resume and was interviewed by Deputy City Attorney Shaffran. Kerrigan's background, golf, the weather and the year-round advantages of San Diego were discussed. Shaffran suspected Kerrigan may have come to San Diego to retire and derived the opinion that Kerrigan was not aggressive or dynamic enough to make a good prosecutor; he seemed more interested in other fields of law. Shaffran told Chief Criminal Deputy Swett not to hire Kerrigan.

Swett also interviewed Kerrigan and discussed Kerrigan's previous legal experience and his good health and physical fitness. Swett remarked that years ago they hired a retired Navy officer in Kerrigan's age bracket.

After Swett interviewed at least 30 applicants, 5 ranging in age from 27 to 31 years were hired. Kerrigan was informed of his nonselection by

letter from Swett who added: ". . . We want you to know, however, that we are very highly impressed with your qualifications.

"We shall keep your resume in our active file and in the event an unforeseen opening on our staff occurs, your name will be among those seriously considered for employment."

Thereafter Kerrigan filed a verified complaint with the FEPC alleging the city attorney had violated Labor Code section 1420.1, subdivision (a), by denying him employment solely because of his age. The FEPC employee (Aranita) after investigation decided there was probable cause for the charge. Swett had told Aranita that Kerrigan's age and attitude might make working with younger attorneys difficult. Moreover the office's recruiting efforts were directed primarily to accredited law schools and that the only older attorneys hired (with one exception) were retired military men who attended law school after retirement.

Further, during the investigation, two openings in the city attorney's office developed. Swett told Aranita he would not consider Kerrigan while the FEPC complaint was pending.

The complaint was heard before an administrative law judge and three members of the FEPC. An FEPC attorney represented Kerrigan. Swett testified he did not consider Kerrigan unqualified for the job; he considered his age a "plus," but nevertheless considered him to be less qualified than the persons he hired. The five persons hired had been working in the office as interns. Swett testified Kerrigan's age played absolutely no part in his decision not to hire him. He explained the statistics were included in the brochure to give interested persons from out-of-town a picture of the people they would be working with. Deputy Shaffran was 46 years old when hired fresh from law school. Shaffran told Swett not to hire Kerrigan because of his personality.

The opinion adopted by the FEPC included, inter alia, the following findings: It was not established by a preponderance of the evidence that Kerrigan was denied employment solely because of his age or that the city attorney violated Labor Code section 1420.1, subdivision (a).

The trial court reviewed the administrative record and agreed with the FEPC, finding the FEPC's decision was supported by the weight of the evidence as well as by substantial evidence.

## DISCUSSION

In 1972 the Legislature amended the California Fair Employment Practice Act (Lab. Code, § 1410 et seq.) to add section 1420.1 providing in pertinent part:

"(a) It is an unlawful employment practice for an employer to refuse to hire or employ, . . . *any individual between the ages of 40 and 64 solely on the ground of age,* except in cases where the law compels or provides for such action. This section shall not be construed to make unlawful the rejection . . . where the individual applicant or employee failed to meet bona fide requirements for the job or position sought or held, . . .

"(b) This section shall not limit the right of an employer, employment agency, or labor union to select or refer the better qualified person from among all applicants for a job. The burden of proving a violation of this section shall be upon the person or persons claiming that the violation occurred." The new statute took its place beside section 1420 which declared it unlawful employment practice for an employer to discriminate against any person because of his race, religious creed, color, national origin, ancestry, or sex.[1] Section 1412 declared the opportunity to seek, obtain and hold employment without discrimination on the grounds specified in section 1420 to be a civil right, and section 1411 declared the protection of such opportunity to be a matter of public policy. These sections 1411 and 1412 have not been amended to add age discrimination.

Code of Civil Procedure section 1094.5 authorizes the administrative mandamus procedure to obtain judicial review of final adjudication decisions of the FEPC. Where, as here, it is claimed that findings are not supported by the evidence, the statute contemplates that the court will apply either the independent judgment test or the substantial evidence test depending upon the nature of the right in issue. In *Strumsky* v. *San Diego County Employees Retirement Assn.,* 11 Cal.3d 28, 44-45 [112 Cal.Rptr. 805, 520 P.2d 29], the Supreme Court held: "[I]f the order or decision of the agency substantially affects a fundamental vested right, the court, in determining under section 1094.5 of the Code of Civil Procedure whether there has been an abuse of discretion because the findings are not supported by the evidence, must exercise its independent

---

[1]Comparable federal legislation is found in 29 United States Code section 621 et seq. (age discrimination) and title VII of the 1964 Civil Rights Act (42 U.S.C. § 2000e et seq.) (discrimination based on race, color, sex, religion or national origin). (See gen. 5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, §§ 420-422 and 426-433, pp. 3717-3720 and 3723-3731.)

judgment on the evidence and find an abuse of discretion if the findings are not supported by the weight of the evidence. If, on the other hand, the order or decision does not substantially affect a fundamental vested right, the trial court's inquiry will be limited to a determination of whether or not the findings are supported by substantial evidence in light of the whole record."

Kerrigan's right here is to equal employment opportunity regardless of age. He does not claim a fundamental vested right to be hired for a particular job, but only that he be treated fairly when being considered for a government position. In the specifics of his case, Kerrigan asks that his application not be summarily dismissed or he be otherwise discriminated against because he is 55 years old.

The Attorney General suggests the substantial evidence test; the courts should defer to the adjudications of the FEPC regardless of which party has prevailed in view of that agency's expertise in investigating and resolving charges of unfair employment practices. In *Bixby* v. *Pierno,* 4 Cal.3d 130, 146 [93 Cal.Rptr. 234, 481 P.2d 242], the court used similar reasoning in connection with the issuance of licenses. The city, on the other hand, concedes Kerrigan's right to employment was fundamental but contends such right was not vested since he was only a job *applicant.*

Whether an administrative decision substantially affects a fundamental, vested right so as to require independent judgment review must be decided on a case-by-case basis. In *Bixby, supra,* at page 144, the court offered this guidance: "[T]he courts in this case-by-case analysis consider the nature of the right of the individual: whether it is a fundamental and basic one, which will suffer substantial interference by the action of the administrative agency, and, if it is such a fundamental right, whether it is possessed by, and vested in, the individual or merely sought by him. In the latter case, since the administrative agency must engage in the delicate task of determining whether the individual qualifies for the sought right, the courts have deferred to the administrative expertise of the agency. If, however, the right has been acquired by the individual, and if the right is fundamental, the courts have held the loss of it is sufficiently vital to the individual to compel a full and independent review. The abrogation of the right is too important to the individual to relegate it to exclusive administrative extinction."

No case has been found precisely in point; however, in *Northern Inyo Hosp.* v. *Fair Emp. Practice Com.,* 38 Cal.App.3d 14 [112 Cal.Rptr. 872],

an employer claimed a "fundamental vested right to establish its own employment practices," petitioned under Code of Civil Procedure section 1094.5 to set aside an adverse FEPC order. The trial court exercised its independent judgment on the sufficiency of the evidence. The appeal court held this error. The employer had no vested right to conduct its business free of reasonable governmental regulations. However, by way of dicta the court said its decision would not preclude use of the independent judgment in the review of an FEPC decision *unfavorable* to an employee. (*Id.,* at p. 23, fn. 9.)

In *Kilpatrick's Bakeries, Inc.* v. *Unemployment Ins. Appeals Bd.,* 77 Cal.App.3d 539 [143 Cal.Rptr. 664], the court rejected the dichotomous approach taken in *Northern Inyo Hosp., supra,* 38 Cal.App.3d 14, and held the independent judgment test must be applied to appeals by both employees and employers in unemployment compensation cases since their interests are virtually identical. This meager authority forces us back to basics for answers.

The term "fundamental right" has not been precisely defined. The *Bixby* language is the Supreme Court's latest cannon shot: "In determining whether the right is fundamental the courts do not alone weigh the economic aspect of it, but the effect of it in human terms and the importance of it to the individual in the life situation." (*Bixby* v. *Pierno, supra,* 4 Cal.3d 130, 144.) Equal employment opportunity is an obvious candidate to match this description.

In decreeing a strict judicial scrutiny in the analogous area of sex discrimination in employment, the California Supreme Court in *Sail'er Inn, Inc.* v. *Kirby,* 5 Cal.3d 1, 17 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351], discussed the fundamental aspects of employment and equal employment opportunity: "The right to work and the concomitant opportunity to achieve economic security and stability are essential to the pursuit of life, liberty and happiness. As early as 1915, the United States Supreme Court declared that 'the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of [the Fourteenth] Amendment to secure.' [Citation.] The California Legislature accords statutory recognition to the right to work by declaring the opportunity to seek, obtain and hold employment without discrimination a civil right. [Citation.] Limitations on this right may be sustained only after the most careful scrutiny. [Citations.]"

Gainful employment is central to the individual's role as a productive member of society, to his ability and to provide for his family and himself, and to his psychological need for self-esteem and respect. The ability to seek employment free of discriminatory bars is a necessary corollary. Thus the Legislature has declared it the public policy of California to stamp out age discrimination in employment. "It is the public policy of the State of California that manpower should be used to its fullest extent. This statement of policy compels the further conclusion that human beings seeking employment, or retention thereof, should be judged fairly and without resort to rigid and unsound rules that operate to disqualify significant portions of the population from gainful and useful employment. Accordingly, use by employers, employment agencies, and labor organizations of arbitrary and unreasonable rules which bar or terminate employment on the ground of age offend the public policy of this State." (Unemp. Ins. Code, § 2070.) Further, the Legislature has outlawed age discrimination in hiring practices. (Lab. Code, § 1420.1.)

■ We conclude equal employment opportunity is fundamental to the individual in economic and human terms and in the totality of the life situation. Thus, equal employment opportunity qualifies as a fundamental right for the purposes of fuller judicial review of administrative agency decisions.

Independent judgment review is not proper unless equal employment opportunity is also a "vested right." The *Bixby* court defined "vested right" by way of contrast: "and, if it is such a fundamental right, whether it is possessed by, and vested in, the individual or merely sought by him." (*Bixby* v. *Pierno, supra,* 4 Cal.3d 130, 144.) "Vested" most often refers to property rights, e.g., unemployment compensation (*Thomas* v. *California Emp. Stab. Com.,* 39 Cal.2d 501 [247 P.2d 561]), continuation of welfare benefits (*Harlow* v. *Carleson,* 16 Cal.3d 731 [129 Cal.Rptr. 298, 548 P.2d 698]). But the meaning of vested, "possessed by," need not be limited to describing tangible wealth; constitutional and statutory rights can also be "possessed" by a person: to that extent, they are vested. Kerrigan's statutorily conferred right to be free of age discrimination in seeking employment in this sense is a vested right. (See *Perea* v. *Fales,* 39 Cal.App.3d 939 [114 Cal.Rptr. 808].)

Similarly, where the action of an administrative agency infringes constitutionally granted rights, independent judicial review must be invoked. In *Adcock* v. *Board of Education,* 10 Cal.3d 60 [109 Cal.Rptr. 676, 513 P.2d 900], the Supreme Court imposed review by independent

judgment where a teacher claimed that his transfer to another school was a penalty given him for exercising First Amendment rights. The court stated: "[I]t has been essential to adopt a special rule or standard to review administrative decisions when constitutional rights are assertedly limited. [Citations.]" (*Id.*, at pp. 65-66.) While the court did not use the "fundamental vested right" language, the essential concept is the same.[2] The courts have a duty to protect constitutional or fundamental rights from infringement by administrative agencies. The courts, not the administrative agency, have the valuable expertise, the broad background and constitutional foundation necessary to perceive and defend constitutional and fundamental rights from a balanced perspective. A line, carefully drawn between the subjects over which the agency has important expertise and the areas of quasi-judicial decision-making over which the courts have superior knowledge and background, point to the independent judgment standard where constitutional rights are circumscribed.

We conclude the independent judgment test was the appropriate standard to be applied by the trial court to Kerrigan's challenge to the FEPC determination. In an abundance of caution the trial court here applied both tests and found the FEPC decision supported by both substantial evidence and the weight of the evidence. A similar approach was taken by the trial court in *Strumsky, supra.* There the trial court, again out of an abundance of caution found the administrative decision supported by substantial evidence but indicated it would reverse the decision on an independent judgment review. The Supreme Court in the interest of judicial economy found the trial court's independent judgment was supported by substantial evidence and affirmed. (*Id.*, at p. 46.)

■ Our task, similarly, is to determine whether there is substantial evidence to support the trial court's judgment. (*Bixby* v. *Pierno, supra,* 4 Cal.3d 130, 143, fn. 10; *Moran* v. *Board of Medical Examiners,* 32 Cal.2d 301, 308 [196 P.2d 20]; *Mountain Defense League* v. *Board of Supervisors,* 65 Cal.App.3d 723, 728 [135 Cal.Rptr. 588].)

Resolving all conflicts in the evidence in favor of the judgment in this case and drawing all legitimate and reasonable supporting inferences as we must, we conclude the judgment must be affirmed.

---

[2]*Adcock* was decided before *Strumsky*; independent judgment did not then apply to the decision of a local agency affecting a fundamental vested right but would apply after *Strumsky*.

Labor Code section 1420.1, subdivision (b), placed the ultimate burden of proof, the burden of persuasion, squarely on Kerrigan.

The evidence before the FEPC and the trial court, albeit disputed, in the inferences to be drawn, is substantial in nature and supports the trial court's determination that Kerrigan was not discriminated against on account of age. Kerrigan simply failed to meet, to carry his burden of proof.

Kerrigan's claims of procedural error are also without merit. He is in no position to complain of the FEPC's or the trial court's failure to find a violation of Labor Code section 1420, subdivision (e), when he did not charge such an offense. The FEPC's failure to include in its order written notice of the right to judicial review obviously did not prejudice Kerrigan. The trial court was not required to make written findings in absence of a request. (Code Civ. Proc., § 632; *Friends of Lake Arrowhead v. Board of Supervisors*, 38 Cal.App.3d 497, 518, fn. 17 [113 Cal.Rptr. 539].)

Judgment affirmed.

Cologne, Acting P. J., and Wiener, J., concurred.

Petitions for a rehearing were denied April 16, 1979, and appellant's petition for a hearing by the Supreme Court was denied June 7, 1979.