**Eduardo P. TRUJILLO,**
**Plaintiff-Appellant,**

v.

**COUNTY OF SANTA CLARA,**
**Defendant-Appellee.**

No. 84–2281.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 14, 1985.

Decided Nov. 5, 1985.

John D. Fouts, True, Wetzel, Colton, Fouts & Ogulink, San Francisco, Cal., for plaintiff-appellant.

Steven Woodside, San Jose, Cal., for defendant-appellee.

Before WALLACE and POOLE, Circuit Judges, and STEPHENS,* District Judge.

WALLACE, Circuit Judge:

Trujillo appeals from the district court's dismissal of his employment discrimination claims on the ground that they are precluded by Trujillo's previous actions initiated under California's administrative procedures. The district court had jurisdiction under 42 U.S.C. §§ 1981, 1983, Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e to 2000e–17, and pursuant to 28 U.S.C. §§ 1331, 1343. We have jurisdiction under 28 U.S.C. § 1291. We affirm, in part on other grounds.

I

In August 1974, the County of Santa Clara Sheriff's Department (the County) hired Trujillo to work on a federally-funded project (the project) to study the control, custody and care of jail inmates. The County hired Trujillo for the position of Administrative Analyst II on a six-month provisional basis.

In order to advance to the status of permanent employee, Trujillo was required to pass a civil service examination. He failed the examination and, as a result, the County terminated his employment in February 1975. Had Trujillo passed this examination and a further oral examination, he would have continued in his position until the project's termination in August 1977. After a successful probationary period, Trujillo would then have been eligible to transfer to another county position.

The examination in question was subsequently submitted for review to the Technical Advisory Committee (the Advisory Committee) of the California Fair Employment and Housing Commission (the Commission). The Advisory Committee found that the test violated its testing guidelines because it had an adverse impact on persons of Mexican origin and was not shown to be job-related.

On August 22, 1975, Trujillo filed a complaint with the federal Equal Employment Opportunity Commission (EEOC) alleging discrimination on the basis of race and national origin in violation of Title VII. As required by section 706(c) of Title VII, 42 U.S.C. § 2000e–5(c), Trujillo also filed a state complaint with the Fair Employment Practice Commission, the Commission's predecessor,[1] alleging violations of section 1420 of the California Fair Employment Practices Act, Cal.Lab.Code §§ 1410–1433 (West 1971), which was superseded in 1980 by the California Fair Employment and Housing Act (FEHA), Cal.Gov't Code §§ 12900–12996 (West 1980 & Supp.1985).[2]

Under the FEHA, an individual has a right to employment opportunities free from discrimination on numerous grounds, including race, Cal.Gov't Code § 12921 (West 1980) (former section 1412), and such

---

* Honorable Albert Lee Stephens, Jr., United States District Judge, Central District of California, sitting by designation.

1. Because the functions of the new Fair Employment and Housing Commission with regard to employment discrimination claims are essentially the same as those of the old Fair Employment Practice Commission, we will refer to both throughout the opinion as "the Commission."

2. Although Trujillo's claim is governed by former Cal.Lab.Code § 1420, the procedures for processing that claim after 1980 were governed by the new FEHA. We will therefore cite the appropriate sections of the new FEHA unless a particular section of the former Labor Code is relevant.

discrimination is against public policy, *id.* § 12920 (West 1980) (former section 1411), and unlawful. *Id.* § 12940(a) (West Supp. 1985) (former section 1420). An individual claiming discrimination in employment must file a complaint with the Commission, *id.* § 12960 (West Supp.1985) (former section 1422), the function of which is to investigate, conciliate and seek redress for aggrieved individuals. *See id.* § 12930 (West Supp.1985) (former section 1419). After a complaint is filed, the Commission must investigate, *id.* § 12963 (West 1980) (former section 1421), and if it finds the claim to be valid it must seek conciliation. *Id.* § 12963.7 (West 1980) (former section 1421). If conciliation fails, it must issue an accusation to be heard by the Commission at an administrative hearing. *Id.* § 12965(a) (West Supp.1985) (former section 1423). If an accusation is not issued within 150 days after the filing of a complaint, or if the case is otherwise closed by the Commission, the Commission must issue a right-to-sue letter to the complainant. *Id.* § 12965(b) (West Supp.1985) (former section 1422.2(b) ).[3] Only upon receipt of a right-to-sue letter may an individual then file a civil action in a California Superior Court. *Id.* The EEOC deferred to the state agency according to Title VII's scheme. *See* 42 U.S.C. § 2000e–5(c).

The Commission decided to proceed to accusation against the County in June 1979. An Administrative Law Judge (ALJ) held a hearing, with counsel for the Commission presenting the case for Trujillo, as directed by the statute, *see* Cal.Gov't Code § 12969 (West 1980) (former section 1425). Prior to the hearing, Trujillo had consulted an attorney to discuss the procedures for pursuing his claims. At the hearing itself, however, he appeared without counsel. Nevertheless, he was permitted to make a statement to the ALJ and to file two lengthy briefs by stipulation of the Commission and the County.

The ALJ subsequently found that the County had discriminated against Trujillo by terminating his employment on the basis of the examination. In his proposed decision, the ALJ awarded Trujillo back pay from the date of his discharge (February 1975) through the date of the project's termination (August 1977). In August 1980, the Commission adopted the ALJ's proposed order but extended the period of back pay up to the time of its decision, reasoning that but for the examination, the County would have hired Trujillo as a permanent employee. The Commission, however, refused to order reinstatement. Both parties then petitioned the Commission for reconsideration of its order, which was denied.

In January 1981, the County filed a petition for a writ of mandate under Cal.Civ. Proc.Code § 1094.5 (West Supp.1985) in the Superior Court of Santa Clara County to set aside the Commission's decision. The Commission's attorney and Trujillo's independent counsel opposed the County's petition. Trujillo's attorney filed a memorandum in opposition both ·to the County's petition and to portions of the Commission's decision which failed to award Trujillo reinstatement. He also requested attorneys' fees.

The trial court overturned the Commission's decision on the ground that there was no evidence of discrimination surrounding Trujillo's termination. *Trujillo did not appeal the trial court's adverse determination.* The Commission, however, appealed to the California Court of Appeal. That court reversed the trial court, but modified the Commission's decision essentially to reinstate the ALJ's award to terminate the County's back pay

---

**3.** When Trujillo first filed his complaint with the Commission, there was no explicit statutory right enabling him to bring suit in Superior Court if the Commission failed to redress his grievance. However, California courts implied a private cause of action after the complainant exhausted his administrative remedies. *See Hollon v. Pierce,* 257 Cal.App.2d 468, 476, 64 Cal.Rptr. 808, 813 (1967). In 1977, before the Commission held its hearing in this case, the legislature added a private cause of action in Labor Code section 1422.2(b). *See* Act of Sept. 30, 1977, ch. 1188, § 34, 1977 Cal.Stat. 3895, 3911. Thus, Trujillo had a statutory right to demand a right-to-sue letter before the Commission proceeded to the hearing stage.

liability as of the date of the project's completion. The appellate court held that the assumption that Trujillo would continue to be employed by the County after the project had terminated was too speculative to support liability for further back pay or to require reinstatement.

In August 1982, before the conclusion of the state proceedings, Trujillo filed this action seeking reinstatement, full back pay and attorneys' fees. His complaint alleges violations of both Title VII and 42 U.S.C. §§ 1981, 1983. The district court held that his claims were precluded. We review the district court's dismissal on summary judgment de novo. *Lojek v. Thomas,* 716 F.2d 675, 677 (9th Cir.1983).

## II

■ Section 1738 provides that the "judicial proceedings of any court of any ... State ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738. Trujillo concedes that section 1738 applies to his claims under the civil rights statutes. We agree. *See Migra v. Warren City School District Board of Education,* 465 U.S. 75, 104 S.Ct. 892, 898, 79 L.Ed.2d 56 (1984). Trujillo argues, however, that because Title VII requires a plaintiff to bring a claim to the attention of a state agency before suing in federal court, *see* 42 U.S.C. § 2000e–5(c), Congress did not intend section 1738 to apply to Title VII claims, at least not in the circumstances of this case.

The district court held that section 1738 applies to Trujillo's Title VII claim in light of *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) *(Kremer).* In *Kremer,* the Court held that section 1738 applies to a Title VII action after an *employee* appeals a state agency's decision regarding his employment discrimination claim to the state courts. *See id.* at 473–78, 102 S.Ct. at 1893–95. Although Trujillo concedes that *Kremer*'s language is broad enough to control this case, he argues that we

should not apply *Kremer* because it was the County rather than the employee who initiated the state court proceedings. He contends that to preclude a Title VII claim in a situation in which an employee was in state court only because he was forced to defend a state administrative decision "would have dire consequences for Title VII's scheme of deferral of employment discrimination claims to state agencies."

We must decide, therefore, whether *Kremer* applies when it is the *employer* rather than the *employee* who seeks judicial review of an adverse state administrative decision in the state courts. In *Kremer,* the employee filed a complaint with the EEOC, which referred the complaint to the New York Division of Human Rights. 456 U.S. at 463–64, 102 S.Ct. at 1887–88. That agency concluded that there was no probable cause to believe that the employer engaged in the alleged discriminatory practices. *Id.* at 464, 102 S.Ct. at 1888. The employee then unsuccessfully appealed the case in the Appellate Division of the New York Supreme Court. *Id.* The EEOC subsequently issued the employee a right-to-sue letter after ruling that reasonable cause did not exist to believe the discrimination charges. *Id.* at 465, 102 S.Ct. at 1888. The employee then brought a Title VII action in federal district court. The district court dismissed the suit as barred by res judicata, and the Second Circuit affirmed. *Id.* at 466, 102 S.Ct. at 1889.

The Supreme Court held that the Title VII action was precluded by the state court judgment. In reaching this holding, the Court found that Title VII creates neither an express nor an implied partial repeal of section 1738 because it is not manifestly inconsistent with that section. *See id.* at 468–76, 102 S.Ct. at 1890–94. The Court further observed that nothing in Title VII's legislative history indicated "that Congress intended to override the historic respect that federal courts accord state court judgments." *Id.* at 471–72, 102 S.Ct. at 1892 (footnote omitted).

In order to determine the merits of Trujillo's arguments, it is necessary to review

the remedial framework of Title VII and related California discrimination law and procedure. An individual claiming discrimination in employment practices must first file his federal claim with the EEOC. *See* 42 U.S.C. § 2000e–5(b). If the state in which the claim arises provides additional remedies for discrimination plaintiffs, however, the aggrieved individual must pursue those state remedies for at least sixty days before filing his claim with the EEOC. *See id.* § 2000e–5(c). Once the state remedy has been adequately pursued, the EEOC conducts an investigation, *id.* § 2000e–5(b). The investigation culminates in one of two ways: (1) the EEOC brings a civil enforcement action; or (2) the EEOC issues a right-to-sue letter permitting the aggrieved employee to bring a civil action. *Id.* § 2000e–5(f)(1). If the employee has been issued a right-to-sue letter, *see* 29 C.F.R. § 1601.28 (1984), he may choose to sue in either state or federal court. We point out, however, that we recently held that Title VII claims are within the exclusive jurisdiction of the federal courts. *See Valenzuela v. Kraft, Inc.,* 739 F.2d 434, 436 (9th Cir. 1984).

■ Trujillo claims that if preclusive effect is given to the state appellate court determination, he will be denied his choice of forum contrary to the scheme of Title VII. Thus, he argues, in this situation, unlike the situation in *Kremer* in which the employee pursued a state court remedy, Title VII and section 1738 cannot be read consistently. Trujillo concludes that Title VII has therefore "effected an implied partial repeal of section 1738." We disagree.

The Supreme Court in *Kremer* did not discuss whether the result in that case would have been different if it had been the employer who had invoked state court review. It is significant, however, that the Court focused on the *existence* of the state court judgment and indicated that the finality of state court judgments should not "depend on which side prevailed in a given case." *Kremer,* 456 U.S. at 470, 102 S.Ct. at 1892 (footnote omitted). More recently, the Court has described *Kremer* in broad

terms as holding that Title VII does not implicitly repeal section 1738. *See Marrese v. American Academy of Orthopaedic Surgeons,* —— U.S. ——, 105 S.Ct. 1327, 1332, 84 L.Ed.2d 274 (1985) (*Marrese* ).

*Marrese* holds that the preclusive effect of a state court judgment is determined solely by reference to the applicable state law principles. *Id.* 105 S.Ct. at 1331–32. Even if the federal action lies within the exclusive jurisdiction of the federal courts, state law principles of preclusion must first be applied to determine whether the state would preclude a subsequent federal claim. *Id.* at 1332. Only if the federal claim would be precluded under state law must the district court then "determine if an exception to § 1738 should apply." *Id.* at 1335. While observing that in the resolution of this issue "the primary consideration must be the intent of Congress," the Court cited *Kremer* as an example of a case in which the statute (Title VII) did not create an implied exception to section 1738. *Id.*

Two circuits have already faced the issue before us, and in both instances have interpreted *Kremer* as precluding any subsequent federal action if state law would find the plaintiff's subsequent federal claim precluded by the initial state proceedings under the doctrines of res judicata or collateral estoppel. *See Hickman v. Electronic Keyboarding, Inc.,* 741 F.2d 230 (8th Cir. 1984) (*Hickman* ); *Gonsalves v. Alpine Country Club,* 727 F.2d 27 (1st Cir.1984) (*Gonsalves* ).

*Hickman* presents a fact pattern identical to that presented by Trujillo. The employee filed a complaint with the Missouri Commission on Human Rights, which subsequently held a hearing on his claim. 741 F.2d at 231. The agency adopted the hearing officer's recommendation, which had found for the employee. *Id.* at 232. The employer appealed to the local Missouri trial court, which reversed. *Id.* The agency appealed to the Missouri Court of Appeals, but later withdrew its appeal. *Id.* The employee then filed suit in federal court. *Id.* Throughout the state proceed-

ings, only the agency pursued the employee's complaint; the employee's independent counsel did not. *Id.* at 232–33. The Eighth Circuit held that the employee's attempt to distinguish *Kremer* lacked merit because "the preclusive effect federal courts must give state-court decisions under § 1738 does not depend on whether the plaintiff or the defendant sought state-court review," unless state res judicata principles themselves "dr[a]w such a distinction." *Id.* at 232 n. 3.

In *Gonsalves*, two employees were forced to defend an administrative award in their favor when their employer appealed to a Rhode Island trial court. 727 F.2d at 27–28. The court reversed the award, and although the Rhode Island Supreme Court initially granted the employees' writ of certiorari, that court later quashed the writ for lack of prosecution. *Id.* at 28. The employees then brought a Title VII action in federal district court, which held that the action was precluded. *Id.* The First Circuit affirmed, holding that the employees' attempt to distinguish *Kremer* was "a distinction without a difference." *Id.* The court stated that "a fair reading of *Kremer* shows that its rationale rests on neutral principles, not on the happenstance of which party—employer or employee—brings the state court action." *Id.* at 29.

We find those cases persuasive, particularly in light of the Supreme Court's interpretation of *Kremer* in *Marrese*. The cases on which Trujillo relies to support his position precede *Kremer*. *See Smouse v. General Electric Co.,* 626 F.2d 333, 335–36 (3d Cir.1980) (per curiam); *Gunther v. Iowa State Men's Reformatory,* 612 F.2d 1079, 1083–84 (8th Cir.), *cert. denied,* 446 U.S. 966, 100 S.Ct. 2942, 64 L.Ed.2d 825 (1980). Trujillo concedes, however, that the Third Circuit has discredited *Smouse* on the basis of *Kremer*. *See Davis v. United States Steel Supply,* 688 F.2d 166, 178 (3d Cir.1982) (en banc) (Garth, J., concurring) ("all of those views are now 'water under the bridge' "), *cert. denied,* 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983) *(Davis).* The First Circuit has also concluded that "*Gunther* can no longer be

considered good law after *Kremer.*" *Hickman,* 741 F.2d at 232 n. 3. *See also Unger v. Consolidated Foods Corp.,* 693 F.2d 703, 710 n. 11 (7th Cir.1982) (questioning precedential value of *Smouse* and *Gunther* after *Kremer* because "it should be immaterial whether [the] plaintiff or defendant initiated the state court review"), *cert. denied,* 460 U.S. 1102, 103 S.Ct. 1801, 76 L.Ed.2d 366 (1983). Moreover, the Supreme Court cited *Smouse* and *Gunther* as two of the cases holding contrary to the rule it adopted in *Kremer*. *Kremer,* 456 U.S. at 466 n. 5, 102 S.Ct. at 1889 n. 5. Thus, these cases fail to provide support for Trujillo's position.

Trujillo relies primarily on language in *Kremer* to the effect that "[n]o provision of Title VII requires claimants to pursue in state court an unfavorable state administrative action." 456 U.S. at 469, 102 S.Ct. at 1891. We conclude that a narrow reading of *Kremer* on the basis of the distinction Trujillo suggests would be unreasonable, particularly in light of *Marrese*. Here, there is no question that the County would be foreclosed from challenging the issue of discrimination in the federal suit under principles of collateral estoppel. Indeed, Trujillo takes this very position in his brief. No different result should come about with regard to Trujillo's claims simply because he did not initiate the state court proceedings in the same dispute. More importantly, as Judge Garth observed in his concurrence in *Davis, see* 688 F.2d at 178, the Court in *Kremer* must have been aware that a situation such as that facing Trujillo might arise, in light of the concerns expressed by Justice Blackmun in his dissent, *see Kremer,* 456 U.S. at 504 n. 18, 102 S.Ct. at 1909 n. 18 (Blackmun, J., dissenting), and the Court's citation of *Smouse* and *Gunther,* 456 U.S. at 466 n. 5, 102 S.Ct. at 1889 n. 5.

Trujillo's argument that he has an absolute right to his choice of judicial forum once he has abided by the state administrative procedures was rejected by the Court in *Kremer:* "Nothing in the legislative history of [Title VII] suggests that Congress

considered it necessary or desirable to provide an absolute right to relitigate in federal court an issue resolved by a state court." 456 U.S. at 473, 102 S.Ct. at 1893. Thus, the mere presence of a federal cause of action in Title VII does not necessarily entitle a plaintiff to a trial de novo in federal court. *See id.* at 472 n. 10, 102 S.Ct. at 1892 n. 10.

Unless the state court's decision is final, there would be little "incentive for States to work towards effective and meaningful antidiscrimination systems." *Id.* at 478, 102 S.Ct. at 1896. Title VII was enacted not to preempt state discrimination law, but rather to supplement it if state law was inadequate. *See id.* at 470–73, 102 S.Ct. at 1891–93. *Accord New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 65, 100 S.Ct. 2024, 2031, 64 L.Ed.2d 723 (1980) *(Carey).* Indeed, the whole scheme of Title VII is "directed toward administrative cooperation" between state and federal systems, with "no evidence of congressional intent to compromise or circumscribe the validity of state *judicial* proceedings." *Kremer,* 456 U.S. at 470 n. 8, 102 S.Ct. at 1892 n. 8 (emphasis in original).

### III

Having concluded that state principles of preclusion govern the outcome of this case, we now must determine, as directed by *Marrese,* whether California law would accord preclusive effect to the California Court of Appeal's decision. We first examine whether Trujillo's claims are precluded by res judicata. We must address Trujillo's Title VII claim separately from his claims under 42 U.S.C. §§ 1981 and 1983.

■ The Title VII issue is easily disposed of. We have held that California courts will not apply res judicata to claims not raised in prior proceedings unless the court rendering the prior judgment had jurisdiction to hear such claims. *See Eichman v. Fotomat Corp.,* 759 F.2d 1434, 1437 (9th Cir.1985). In *Valenzuela,* we held that Title VII claims are within the exclusive jurisdiction of the federal courts. 739 F.2d at 436. Thus, Trujillo's Title VII

claim is not precluded by res judicata. *See Hirst v. State of California,* 770 F.2d 776, 777 (9th Cir.1985).

Trujillo's claims under 42 U.S.C. §§ 1981 and 1983, however, survive this threshold jurisdictional issue, since both claims could have been brought in state court. We must, therefore, address the res judicata issue.

In California, res judicata precludes a plaintiff from litigating a claim if: the claim relates to the same "primary right" as a claim in a prior action, the prior judgment was final and on the merits, and the plaintiff was a party or in privity with a party in the prior action. *See Slater v. Blackwood,* 15 Cal.3d 791, 795, 543 P.2d 593, 594, 126 Cal.Rptr. 225, 226 (1975); *Busick v. Workmen's Compensation Appeals Board,* 7 Cal.3d 967, 974, 500 P.2d 1386, 1391–92, 104 Cal.Rptr. 42, 47–48 (1972); *see also* Cal.Civ.Proc.Code § 1908 (West 1983).

Trujillo's sections 1981 and 1983 claims both relate to the same "primary right"— the right to be free from employment discrimination based on race or national origin—as his state-adjudicated claim under the FEHA. *See Johnson v. American Airlines, Inc.,* 157 Cal.App.3d 427, 431–33, 203 Cal.Rptr. 638, 640–41 (1984). Furthermore, a decision on a petition for writ of mandate seeking review of an administrative order is considered a final decision on the merits for res judicata purposes under California law. *See Hollywood Circle, Inc. v. Department of Alcoholic Beverage Control,* 55 Cal.2d 728, 733, 361 P.2d 712, 715, 13 Cal.Rptr. 104, 107 (1961); *People v. Western Air Lines, Inc.,* 42 Cal.2d 621, 630, 268 P.2d 723, 728, *appeal dismissed,* 348 U.S. 859, 75 S.Ct. 87, 99 L.Ed. 677 (1954).

Trujillo essentially offers three arguments against the application of res judicata to his sections 1981 and 1983 claims: (A) he argues that he should not be bound by the California judgment because he was neither a party nor in privity with a party to that litigation; (B) he contends that his due process rights would be violated if the present action is precluded because his in-

terests were insufficiently represented by the Commission and because he exercised no control over the administrative hearing or the state court proceedings; and (C) he argues that preclusion would violate due process because he was deprived of a full opportunity to present his claim. The district court ruled against him and we review the district court's determination of state law de novo. *In re McLinn*, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc).

### A.

Hearings under the FEHA are conducted according to the procedures outlined in the California Government Code, Cal.Gov't Code §§ 11500–11528 (West 1980 & Supp. 1985). *See id.* § 12972 (West 1980). Under section 11500(b), the word " 'Party' includes the agency, the respondent [the County] and any person ... who has been allowed to appear or participate in the proceeding." *Id.* § 11500(b) (West 1980). Although Trujillo was permitted to make a statement at the hearing and to present briefs, the record reflects that neither the Commission, the County nor the ALJ considered Trujillo a full party of record at the administrative hearing. *See Crumpler v. Board of Administration*, 32 Cal.App.3d 567, 575, 108 Cal.Rptr. 293, 299 (1973) (person may intervene with the approval of the agency and become a proper party).

Privity, however, exists when "a person [is] so identified in interest with another that he represents the same legal right." *Zaragosa v. Craven*, 33 Cal.2d 315, 318, 202 P.2d 73, 75 (1949), *quoting* 30 Am.Jur. § 225, at 957. Moreover, when statutory authority to sue has been given specifically to a public entity, a judgment in such a suit is res judicata as to all those "for whose benefit it is prosecuted." *Coachella Valley County Water District v. Stevens*, 206 Cal. 400, 410–11, 274 P. 538, 542 (1929); *see Rynsburger v. Dairymen's Fertilizer Cooperative, Inc.*, 266 Cal.App.2d 269, 277, 72 Cal.Rptr. 102, 107 (1968) *(Rynsburger)*.

The focus of the inquiry is whether the party in the later action was "sufficiently close" to the party in the first action "so as

to justify application" of preclusion principles. *Clemmer v. Hartford Insurance Co.*, 22 Cal.3d 865, 875, 151 Cal.Rptr. 285, 289, 587 P.2d 1098, 1102 (1978) *(Clemmer )*. The circumstances must be "such that the party to be [precluded] should reasonably have expected to be bound by the prior adjudication." *Id.* This requires a contextual approach based on the need to avoid repetitive litigation, *see id.*, rather than an approach based on mere formalities with regard to the parties. *See Rynsburger*, 266 Cal. App.2d at 278, 72 Cal.Rptr. at 107–08; *Perkins v. Benguet Consolidated Mining Co.*, 55 Cal.App.2d 720, 739, 132 P.2d 70, 83 (1942) ("Where a situation arises which so obviously calls for application of the doctrine of res judicata ... definitions of 'privies' and 'privity' drawn from other situations do not constitute an obstacle to reaching a sound result."), *cert. denied*, 319 U.S. 774, 63 S.Ct. 1435, 87 L.Ed. 1721 (1943).

■ Here, the Commission was clearly authorized to proceed against the County on Trujillo's behalf under Cal.Gov't Code § 12969 (West 1980). *Cf.* Cal.Civ.Proc. Code § 369 (West 1973) (permitting civil action by "a person expressly authorized by statute" on behalf of the real party in interest). Indeed, the Commission initiated its proceedings only at Trujillo's request. Trujillo unquestionably had an interest in the outcome of the administrative proceedings, an interest that was "sufficiently close" to the interest of the Commission in pursuing his claim to permit the invocation of res judicata.

More importantly, Trujillo was a party to the proceedings in the California Superior Court. Although he now contends that he was erroneously identified as a respondent to the County's petition for a writ of mandate, he nevertheless responded to the County's petition as the real party in interest and filed a memorandum in support of his objections to both the County's petition and the Commission's decision. Thus, we find no error in the district court's finding that Trujillo had a sufficient nexus with the Commission to preclude this suit.

### B.

■ A person in privity with a party to a prior action is only bound by the earlier action if his interests were adequately represented. *E.g., Clemmer,* 22 Cal.3d at 875, 151 Cal.Rptr. at 289, 587 P.2d at 1102. Trujillo argues that his interest in reinstatement significantly diverged from the interests of the Commission, which were centered on establishing the invalidity of the County's examination. He relies on language in *Carey* suggesting that attorneys employed by state agencies to handle employment discrimination complaints represent the state's interest rather than those of the aggrieved employee. *See* 447 U.S. at 68–70, 100 S.Ct. at 2033–2034. *Carey,* however, was concerned solely with awarding attorneys' fees to a plaintiff who had employed independent counsel. We decline to interpret *Carey* as a broad holding regarding the relationship between state agency attorneys and aggrieved employees in the context of an attempt to invoke res judicata principles.

California courts have characterized the state agency's role in FEHA proceedings as representing the interests of the alleged victim of discrimination. *E.g., Commodore,* 32 Cal.3d at 218, 185 Cal.Rptr. at 274, 649 P.2d at 916 (the Commission "acts on the victim's behalf and absorbs the cost of pursuing his claim"); *Kerrigan v. Fair Employment Practice Commission,* 91 Cal.App.3d 43, 47, 154 Cal.Rptr. 29, 32 ("An FEPC attorney represented [the claimant].")*, cert. denied,* 444 U.S. 930, 100 S.Ct. 273, 62 L.Ed.2d 187 (1979) *(Kerrigan).* When the Commission filed its accusation, it sought the same remedies on Trujillo's behalf as he now seeks. Trujillo's only claim of diverging interests centers on the County's appeal of the Commission's award. He claims the Commission was no longer interested in his reinstatement, but only in upholding its invalidation of the County's examination. At this point in the proceedings, however, Trujillo was represented by independent counsel who advanced his objections to the award. Throughout the administrative process, when only the Commission represented Trujillo, he was provided with adequate representation. The fact that the Commission went on to appeal the Superior Court's decision adverse to Trujillo, even when Trujillo himself failed to take any appeal, is sufficient evidence that the Commission's representation was on behalf of Trujillo's interests. Otherwise, the issue of discrimination would have been settled in the County's favor for purposes of collateral estoppel.

### C.

■ Finally, Trujillo contends that he was deprived of a full opportunity to present his claim for reinstatement because the Commission refused to offer certain evidence he believed relevant at the hearing. Under Cal.Gov't Code § 11513(b) (West 1980), only parties are permitted to introduce evidence. *E.g., Crumpler,* 32 Cal.App.3d at 574–75, 108 Cal.Rptr. at 299. The record does not reflect, however, either that Trujillo made any formal attempt to intervene in the proceedings to introduce his evidence or that he gave any indication to the ALJ that he wished to introduce such evidence.

Regardless of whether Trujillo was actually prevented from presenting evidence before the ALJ, he had a full opportunity to present his claims in the Superior Court. Although he states that a respondent to a petition for a writ of mandate cannot ask for affirmative relief in his response, he concedes that nothing prevented him from filing his own petition for a writ of mandate after the County filed its petition. Rather, as he puts it, "he chose to pursue [reinstatement] in federal court rather than state court."

As a person with a beneficial interest in the Commission's award, Trujillo was entitled to seek his own writ of mandate to counter the County's petition. *See* Cal.Civ. Proc.Code §§ 1086, 1094.5 (West 1980 & Supp.1985); *Ault v. Council of City of San Rafael,* 17 Cal.2d 415, 417, 110 P.2d 379, 380 (1941); *e.g., Kerrigan,* 91 Cal. App.3d at 48–49, 154 Cal.Rptr. at 33. Be-

cause employment is considered a fundamental right in California, review of the award would be subject to a limited trial de novo in the Superior Court under the independent judgment test, *see id.* at 51, 154 Cal.Rptr. at 35. Trujillo could then have sought to introduce his evidence on the ground that it had been improperly excluded from the administrative hearing, in order to supplement the administrative record before the trial court. *See* Cal.Civ. Proc.Code § 1094.5(e) (West Supp.1985); *Bixby v. Pierno,* 4 Cal.3d 130, 143 & n. 10, 93 Cal.Rptr. 234, 243 & n. 10, 481 P.2d 242, 251 & n. 10 (1971). Thus, we cannot say that he was deprived of a full opportunity to present his claim.

### IV

Although Trujillo's Title VII claim is not precluded by res judicata, collateral estoppel nevertheless may preclude full litigation of the claim. In California, a party will be estopped from relitigating an issue if: the issue raised in the present action is identical to that decided previously, the prior judgment was final and on the merits, and the person against whom estoppel is asserted was a party or in privity with a party to the prior action. *Clemmer,* 22 Cal.3d at 874, 587 P.2d at 1101–02, 151 Cal.Rptr. at 288–89; *see also* Cal.Civ.Proc. Code § 1908 (West 1983). Of course, collateral estoppel may be invoked only if the party against whom it is being asserted received a full and fair opportunity to litigate his claim in the first proceeding. *See Allen v. McCurry,* 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980).

■ The state appellate court determined that Trujillo's employment would not have continued beyond the date of the project's completion. We hold that Trujillo is collaterally estopped form relitigating this issue in his Title VII action. As we ruled above, the prior judgment was both final and on the merits. Similarly, we incorporate by reference our above discussion (part III. A., B., and C.) to reject Trujillo's contentions that he was neither a party nor in privity with a party to the state litigation, that his interests were insufficiently represented, and that he was deprived of a full opportunity to present his claim.

Because Trujillo is estopped from relitigating the state court's determination that his employment would not have continued beyond the date of the project's completion, he is precluded from seeking both back pay beyond this period and reinstatement.

### V

We now consider whether Title VII entitles Trujillo to seek his remaining remedies—back pay to the date of the project's completion and attorneys' fees—in federal court. *Carey* provides our primary guidance in considering when a claimant in state administrative and judicial proceedings may seek "supplemental relief" in federal court. In *Carey,* an employee prevailed on her discrimination claim after pursuing an administrative remedy. 447 U.S. at 57–59, 100 S.Ct. at 2027–29. At the same time, she had been pursuing a federal action under Title VII. *Id.* at 58–59, 100 S.Ct. at 2028–29. When the New York Court of Appeals denied the employer's motion for leave to appeal, the parties agreed that the federal suit could be dismissed except for the employee's prayer for attorneys' fees, *id.,* which were not recoverable under state law. *Id.* at 67 n. 7, 100 S.Ct. at 2032 n. 7. The Court stated that, under Title VII, proceedings in federal court were "supplements to available state remedies for employment discrimination. Initial resort to state and local remedies is mandated, and recourse to the federal forums is appropriate only when the State does not provide prompt or complete relief." *Id.* at 65, 100 S.Ct. at 2031. Since an award of attorneys' fees was not authorized under state law, the Court held that Title VII permitted the employee to " 'supplement' the state remedy" in federal court. *Id.* at 68, 100 S.Ct. at 2033.

■ *Carey* does not assist Trujillo. An award of back pay is not only authorized under California law, but Trujillo has received such an award. Since state law authorized an award of back pay, we hold, pursuant to *Carey,* that Title VII does not

allow Trujillo to seek a back pay remedy in federal court.

■ Similarly, state law authorized an award of attorneys' fees in the state proceeding to which Trujillo resorted. *See* Cal.Gov't Code § 12970(a) (West 1980 & Supp.1985); *State Personnel Board v. Fair Employment and Housing Commission*, 39 Cal.3d 422, 433–34, 703 P.2d 354, 361, 217 Cal.Rptr. 16, 23 (1985) (interpreting section 12970(a) to authorize award of attorneys' fees). Trujillo clearly sought an award of attorneys' fees before the California Superior Court, but he failed to appeal its decision in favor of the County. He thus waived his right to any fee award under state law. His waiver does not entitle him to seek attorneys' fees in federal court under *Carey*. On the contrary, since state law authorized an award of attorneys' fees, Title VII does not permit Trujillo to seek the remedy in federal court.

### VI

Res judicata precludes Trujillo from pursuing his claims under 42 U.S.C. §§ 1981 and 1983. Collateral estoppel and *Carey* together prevent Trujillo from obtaining further relief in federal court on his Title VII claim. We therefore affirm the district court's dismissal of Trujillo's action.

AFFIRMED.