[No. A050880. First Dist., Div. Four. Dec. 28, 1990.]

APRIL LOVE et al., Petitioners, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Jeff Brown, Public Defender, Peter G. Keane, Ron Albers and Grace Lidia Suarez, Deputy Public Defenders, for Petitioners.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Herbert F. Wilkinson and Joanne S. Abelson, Deputy Attorneys General, for Respondent and for Real Party in Interest.

OPINION

**REARDON, J.**—Petitioners were convicted in the San Francisco Municipal Court of violating Penal Code section 647, subdivision (b) (soliciting an act of prostitution).[1] Pursuant to Penal Code section 1202.6, they were ordered to undergo AIDS counseling and testing.[2] A petition for writ of mandate was filed in respondent superior court on behalf of petitioners and all others similarly situated, challenging the constitutionality of the

---

[1] Section 647 provides in relevant part: "Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor: . . . [¶] (b) Who solicits or who agrees to engage in or who engages in any act of prostitution . . . . As used in this subdivision, 'prostitution' includes any lewd act between persons for money or other consideration."

[2] Acquired immune deficiency syndrome (AIDS) is evidenced by the presence of antibodies to the human immunodeficiency virus (HIV) in a person's blood. The terms "AIDS testing" and "HIV testing" are used interchangeably in this opinion.

statutory testing requirement. Respondent court stayed all testing and ordered the People to file a return. Thereafter, respondent court denied the petition and this petition followed.

Petitioners challenge the testing requirement of the statute on the grounds that it (1) violates their Fourth Amendment right to be free from unreasonable searches; (2) does not comport with the requirements of due process; and (3) denies them equal protection. We conclude that the testing requirement is constitutional and deny the relief requested.

## DISCUSSION

1. *The Testing Mandated by Penal Code Section 1202.6 is a Reasonable Search Under the Fourth Amendment*

■ It is undisputed that "compulsory blood tests are searches subject to the Fourth Amendment, not only because of physical penetration for removal of bodily fluid, but because of subsequent chemical testing leading to the revelation of private medical information." (*Johnetta J.* v. *Municipal Court* (1990) 218 Cal.App.3d 1255, 1272 [267 Cal.Rptr. 666]; *Skinner* v. *Railway Labor Exec. Assn.* (1989) 489 U.S. 602 [103 L.Ed.2d 639, 109 S.Ct. 1402].) ■ It is also undisputed that the control of a communicable disease is a valid exercise of the state's police power: "The adoption of measures for the protection of the public health is universally conceded to be a valid exercise of the police power of the state, as to which the legislature is necessarily vested with large discretion not only in determining what are contagious and infectious diseases, but also in adopting means for preventing the spread thereof." (*In re Johnson* (1919) 40 Cal.App. 242, 244 [180 P. 644] [quarantine for venereal disease]; *Jacobson* v. *Massachusetts* (1905) 197 U.S. 11 [49 L.Ed. 643, 25 S.Ct. 358] [mandatory vaccination for smallpox]; *In re Halko* (1966) 246 Cal.App.2d 553 [54 Cal.Rptr. 661] [quarantine for tuberculosis].) It has been held that the " 'determination by the legislative body that a particular regulation is necessary for the protection or preservation of health is conclusive on the courts except only to the limitation that it must be a reasonable determination, not an abuse of discretion, and must not infringe rights secured by the Constitution.' [Citations.]" (246 Cal.App.3d at pp. 556-557, quoting *DeAryan* v. *Butler* (1953) 119 Cal.App.2d 674, 682 [260 P.2d 98].) ■ The Fourth Amendment, of course, does not prohibit all searches but only those that are unreasonable (*United States* v. *Sharpe* (1985) 470 U.S. 675, 682 [84 L.Ed.2d 605, 613, 105 S.Ct. 1568]), and the reasonableness of a particular search "is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." (*Delaware* v.

*Prouse* (1979) 440 U.S. 648, 654 [59 L.Ed.2d 660, 667-668, 99 S.Ct. 1391], fn. omitted.)

■ Where the state in the exercise of its police power mandates testing for the protection and preservation of the health or safety of its citizenry, such testing may be upheld, against a Fourth Amendment challenge that the testing is "without a warrant and without probable cause or any sort of individualized suspicion," under the "special needs" doctrine. (*Johnetta J.*, *supra*, 218 Cal.App.3d at p. 1273; *Skinner*, *supra*, 489 U.S. at p. 619 [103 L.Ed.2d at p. 661]; *Treasury Employees* v. *Von Raab* (1989) 489 U.S. 656 103 L.Ed.2d 685, 109 S.Ct. 1384].) In upholding mandatory drug testing of certain customs service employees in sensitive positions, the court in *Von Raab*, a companion case to *Skinner*, explained the "special needs" doctrine as follows: "[N]either a warrant nor probable cause, nor, indeed, any measure of individualized suspicion, is an indispensable component of reasonableness in every circumstance. [Citations.] . . . [W]here a Fourth Amendment intrusion serves special governmental needs, beyond the normal need for law enforcement, it is necessary to balance the individual's privacy expectations against the Government's interests to determine whether it is impractical to require a warrant or some level of individualized suspicion in the particular context." (*Id.*, at pp. 665-666 [103 L.Ed.2d at p. 702.)

In *Skinner*, the court, in upholding mandatory blood, breath and urine testing of railroad employees for alcohol and drugs, found that the "special need" for public safety overcame the absence of probable cause or individualized suspicion. Recently, in *Johnetta J.*, Division Five of this District analyzed the constitutionality of the mandatory AIDS testing provision of Health and Safety Code section 199.97, enacted by the people in 1988 as part of Proposition 96. The section provides generally for AIDS blood testing of persons charged in a criminal complaint where there is probable cause to believe that a possible transfer of bodily fluid occurred between the accused and a public safety officer. Applying the *Skinner* analysis, the *Johnetta J.* court held the testing requirement to be a reasonable search notwithstanding the fact (1) that there was no probable cause or individualized suspicion that the defendant, who had bitten a police officer, was afflicted with AIDS and (2) that saliva transfer as a means of contracting AIDS was only a "theoretical possibility . . . ." (*Johnetta J.* v. *Municipal Court*, *supra*, 218 Cal.App.3d at p. 1279.) The special need identified in *Johnetta J.* was the state's interest in protecting the health and safety of its employees faced with the possibility of becoming infected with HIV in the line of duty.

Our task, then, as was our colleagues' in *Johnetta J.*, is to determine, with respect to Penal Code section 1202.6,[3] "(1) whether the blood testing scheme arises from a 'special need' beyond the needs of ordinary law enforcement and (2) if so, whether the intrusion . . . is justified by that need." (*Johnetta J., supra,* 218 Cal.App.3d at p. 1274.)

## A. *The Statute*

In 1988, the Legislature enacted Senate Bill No. 1007 adding sections 1202.6, 647f, 1202.1 and 12022.85 to the Penal Code. (Stats. 1988, ch. 1597, §§ 1-4 [No. 6, Deering's Adv. Legis. Service, pp. 6328-6330.])[4] Section 1202.6 mandates AIDS education for any person convicted of violating section 647, subdivision (b) and requires the court to order the defendant to submit to testing for AIDS. (§ 1202.6, subd. (a).) The report of the test must be furnished to the court and the State Department of Health Services. The report must be maintained as confidential "except that the department shall furnish copies of any such report to a district attorney upon request." (§ 1202.6, subd. (g).) The section further requires the court to furnish the defendant with a copy of the test results at sentencing. If the results are positive, the court must advise the defendant that a subsequent conviction of prostitution will be treated as a felony (§ 647f). (§ 1202.6, subd. (c).)

## B. *The Special Need*

Although section 1202.6 does not itself contain a statement of purpose as did the initiative measure in *Johnetta J.*, the broad purpose of the statute is revealed by the provisions of the act, the legislative history of the act and recent findings of the Legislature regarding AIDS and AIDS testing. In 1986, the Legislature declared that "[t]he rapidly spreading AIDS epidemic poses an unprecedented major public health crisis in California, and threatens, in one way or another, the life and health of every Californian." (Health & Saf. Code, § 199.45, subd. (a).) The Legislature identified sexual contact as a primary means of transmitting the AIDS virus and "prostitutes who pass on the infection to their clients" as a specific group of concern. (Health & Saf. Code, § 199.46, subds. (h), (k).) Testing has been seen to have a preventive aspect in the spread of the disease. In its return, the People direct our attention to the 1986 publication of the United States Public Health Services entitled "Guidelines for Counseling and Antibody Testing to Prevent HIV Infection and AIDS." (Published in 36 Morbidity

---

[3] Unless otherwise indicated, all further statutory references are to the Penal Code.

[4] Section 1202.1 requires AIDS testing of persons convicted of certain sex offenses, and section 12022.85 provides for a penalty enhancement upon a subsequent conviction of a person with knowledge that he or she has tested positive for AIDS.

and Mortality Weekly Report pp. 509-515 (Aug. 14, 1987).)[5] The Service noted that "Counseling and testing [of] persons who are infected or [are] at risk for acquiring HIV infection is an important component of prevention strategy . . . . The primary public health purposes of counseling and testing are to help uninfected individuals initiate and sustain behavioral changes that reduce their risk of becoming infected and to assist infected individuals in avoiding infecting others." (*Id.*, at p. 509.) The guidelines include a recommendation to counsel and test prostitutes, stating, "Male and female prostitutes should be counseled and tested and made aware of the risks of HIV infection to themselves and others. Particularly prostitutes who are HIV-antibody positive should be instructed to discontinue the practice of prostitution. Local or state jurisdictions should adopt procedures to assure that these instructions are followed." (*Id.*, at p. 513.)

Petitioners suggest that the testing requirement of section 1202.6 "is nothing more than a search for evidence to be used in the future." This argument, however, by focusing on the testing requirement, does not constitute a fair reading of the statute because the argument ignores the significant educational provisions of the section. The section orders the defendant convicted of violating section 1202.6 to complete instruction in the causes and consequences of AIDS (§ 1202.6, subd. (a)) and requires an "AIDS prevention education program" to provide "at a minimum" information about the disease and the "resources for assistance" to those who receive a positive test result (§ 1202.6, subd. (d)).

The testing of persons convicted of violating section 647, subdivision (b), and the subsequent penalty enhancement for continued violation of the section by persons with a positive test are a means to deter acts known to spread the disease. Section 1202.6 addresses the problem of the awareness of members of a high-risk group of their HIV status for their own protection and that of those to whom they could transmit the virus.[6] We conclude that the testing requirement of section 1202.6 serves an obvious and compelling "special need."

---

[5] The People in their return have requested this court to take judicial notice of the Public Health Service Guidelines. The Public Health Service, administered by the Surgeon General, is a branch of the Department of Health and Human Services. (42 U.S.C. § 202.) We may take judicial notice of the guidelines pursuant to Evidence Code section 452, subdivision (b). (*Grinnell* v. *Charles Pfizer & Co.* (1969) 274 Cal.App.2d 424, 444 [79 Cal.Rptr. 369].) Having heard no response from petitioners, we take judicial notice as requested.

[6] In 1989, the Legislature found and declared that "people with HIV infection may not avail themselves of early intervention services unless they are aware of the availability of the services and the efficacy of early intervention in prolonging life. This awareness of HIV-infected persons is critical to maximizing the benefits of early intervention." (Health & Saf. Code, § 144.)

## C. *Balancing the Special Need Against the Intrusion*

Having concluded that the testing provision of section 1202.6 advances a legitimate governmental interest, we must balance this aspect of the legislation against the intrusion involved.

With respect to the physical intrusion, i.e., the drawing of blood to perform the test, it has repeatedly been held that this type of intrusion is minimal. As stated by the court in *Skinner* v. *Railway Labor Exec. Assn.*, *supra*, 489 U.S. 602 [103 L.Ed.2d 639], "the intrusion occasioned by a blood test is not significant, since such 'tests are a commonplace in these days of periodic physical examinations and experience with them teaches that the quantity of blood extracted is minimal, and that for most people the procedure involves virtually no risk, trauma, or pain.'" (*Id.*, at p. 625 [103 L.Ed.2d at p. 665, quoting *Schmerber* v. *California* (1966) 384 U.S. 757, 771 [16 L.Ed.2d 908, 920, 86 S.Ct. 1826]; see also *Johnetta J.*, *supra*, 218 Cal.App.3d at p. 1277.) In short, "[t]he blood test procedure has become routine in our everyday life." (*Breithaupt* v. *Abram* (1957) 352 U.S. 432, 436 [1 L.Ed.2d 448, 451, 77 S.Ct. 408].) We agree that blood testing is a minimal physical intrusion.

██ Petitioners contend, however, that the chemical testing of the blood will reveal private medical information and that this intrusion is substantial because there is no provision for confidentiality in the statute. They argue that under section 1202.6 the district attorney may obtain a copy of the blood test report from the Department of Health Services, and that there is no provision restricting the district attorney in the use of the report. The People ask this court to interpret the confidentiality requirement of section 1202.6, subdivision (g) to permit disclosure to a district attorney only for the reasons articulated in section 1202.1, subdivision (c). The People acknowledge that unjustified dissemination of AIDS test results could raise constitutional questions (*Johnetta J.*, *supra*, 218 Cal.App.3d at p. 1278; *Whalen* v. *Roe* (1977) 429 U.S. 589, 599 [51 L.Ed.2d 64, 73, 97 S.Ct. 869]), and argue that the legislative intent was to allow dissemination of test results solely for purposes of criminal investigation of subsequent offenses.

Section 1202.1, as previously noted, was enacted as section 2 of Senate Bill No. 1007, the same bill that added section 1202.6. Unlike the scheme set forth in section 1202.6, the results of AIDS tests performed under section 1202.1 are forwarded to the Department of Justice, not the Department of Health Services. The disclosure provision of section 1202.1 reads: "[T]he Department of Justice shall provide the results of a test or tests as to persons under investigation or being prosecuted under Section 647f or

12022.85, if the results are on file with the department, to the defense attorney upon request; and the results also shall be available to the prosecuting attorney upon request *for the sole purpose of preparing counts for a subsequent offense under Section 647f or sentence enhancement under Section 12022.85.*" (§ 1202.1, subd. (c), italics added.)

█ "It is settled that '[s]tatutes are to be so construed, if their language permits, as to render them valid and constitutional rather than invalid and unconstitutional' [citation] and that California courts must adopt an interpretation of a statutory provision which, 'consistent with the statutory language and purpose, eliminates doubt as to the provision's constitutionality' [Citation.]." (*People* v. *Amor* (1974) 12 Cal.3d 20, 30 [114 Cal.Rptr. 765, 523 P.2d 1173].) █ A court may look beyond the literal words of a statute when plain meaning leads to unreasonable results inconsistent with the purposes of the legislators. (See *United States* v. *American Trucking Associations* (1940) 310 U.S. 534, 543-544 [84 L.Ed. 1345, 1350-1352, 60 S.Ct. 1059].)

█ The aim of the Legislature in enacting Senate Bill No. 1007 was to control the spread of AIDS, in part by providing a deterrent to prostitution activity by one who knows he or she is infected with the AIDS virus. To accomplish this goal, the bill includes a statute enhancing the penalties for subsequent prostitution offenses by making them felonies. Prosecutors obviously would need access to the results of the AIDS test to enforce this law. The statutory scheme envisions no other reason for the prosecutor to obtain or use such information. A construction without the limitation that the People seek would allow dissemination of AIDS test results for purposes totally outside the goal of the legislation and at odds with the confidentiality concerns demonstrated by the Legislature in its other AIDS legislation. (Health & Saf. Code, § 199.21; Pen. Code, § 1202.1; see also Health & Saf. Code, § 199.99.)

The People state that the legislative history contains not a shred of evidence that the Legislature ever considered that the AIDS testing information, obtained upon a prostitution conviction, would be disseminated more broadly than the information obtained upon conviction of a sex crime (§ 1202.1), or that it would be used for purposes other than prosecution of subsequent prostitution offenses. They refer us to the analysis of the bill by the Senate Rules Committee, the Senate Judiciary Committee and the Assembly Public Safety Committee, all of which reported that the test results would be disclosed in the criminal investigation of prostitution and mention no other use by law enforcement. (Sen. Rules Com., Analysis of Sen. Bill No. 1007 (1987-1988 Reg. Sess.) as amended Aug. 29, 1988 at p. 2; Assem. Com. on Pub. Safety, Analysis of Sen. Bill No. 1007 (1987-88 Reg. Sess.) as

amended Aug. 29, 1988, at p. 2; Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1007 (1987-1988 Reg. Sess.) as amended May 4, 1987 at p. 4.) Petitioners do not dispute this statement, contending only that the construction urged by the People requires rewriting the statute. We do not rewrite the statute, however, but simply reject the proposal that the statute allows the district attorney to use test results for purposes unrelated to the statute which requires disclosure to that official. We accept the interpretation urged by the Attorney General, the chief law officer of the state with direct supervisory authority over every district attorney in the state. (Cal. Const., art. V, § 13.) The interpretation by this officer concerning the limitations upon the district attorneys in the statute is entitled to great weight.

We have balanced the Fourth Amendment interests of those persons convicted of prostitution against the promotion of the government's goal of preventing the spread of AIDS. With the minimal intrusion of a blood test and the disclosure restrictions, we conclude that the Fourth Amendment balancing must be struck in favor of the testing requirement.

2. *The Statutory Scheme of Section 1202.6 Comports With Due Process*

■ Petitioners also contend that since a person may be convicted of violating section 647, subdivision (b) without the commission of a sex act or the transmission of bodily fluid, there is no reasonable relation between the statute's means and ends, a requirement that must be met to satisfy both the Fourth Amendment and the due process clause. (See *Hale* v. *Morgan* (1978) 22 Cal.3d 388, 398 [149 Cal.Rptr. 375, 584 P.2d 512]; *Johnetta J.*, *supra*, 218 Cal.App.3d at p. 1283, fn. 9.)

The Legislature, as heretofore discussed, has determined that those who engage in prostitution activities represent a high-risk group in terms of their own health, in contracting AIDS, and in terms of the health of others, in spreading the virus. We must presume that the Legislature "has carefully investigated and has properly determined" that the legislation is necessary. (*Patrick* v. *Riley* (1930) 209 Cal. 350, 356 [287 P. 455].) " '[E]xcept where the court can see, in the light of facts properly brought to its knowledge, that a given police regulation has no just relation to the object which it purports to carry out, and no reasonable tendency to preserve or protect the public safety [or] health . . . , the decision of the legislative body as to the necessity or reasonableness of the regulation in question is conclusive.' " (*Sullivan* v. *City of Los Angeles* (1953) 116 Cal.App.2d 807, 810 [254 P.2d 590], quoting *Odd Fellows' Cemetery Assn.* v. *San Francisco* (1903) 140 Cal. 226, 233 [73 P. 987].) Accordingly, on the record before us, we cannot say

that the legislative determination or judgment concerning AIDS and this high-risk group is unreasonable.

Having so concluded, the fact that there may have been no transfer of bodily fluid in the commission of an act that results in a section 647, subdivision (b) conviction is largely irrelevant. As pointed out in the brief of the People, "whether or not HIV-carrying fluids were transferred during the particular act that establishes the predicate for AIDS testing is not the relevant question. What *is* relevant is whether and to what extent the group affected by the statute . . . are members of a group at high risk for AIDS, and whether and to what extent such persons threaten to transmit the AIDS virus to the general population."

We recognize the danger to constitutional rights of "blanket testing requirement of entire classes of persons." (See *Johnetta J., supra,* 218 Cal.App.3d at p. 1284.) Testing under section 1202.6, however, applies only when a person has been convicted of violating section 647, subdivision (b) and has thus exhibited behavior from which it can be inferred that he or she has been, and may in the future be, sexually involved with multiple partners. It imposes no additional penalty for the crime of which the person is convicted. Although it presents a potential for increased punishment for a subsequent offense, it also furnishes information to avoid that enhanced penalty.

We conclude that there is a reasonable relation between the statute's means and ends and that petitioners' contention to the contrary is without merit.

3. *Section 1202.6 Does Not Deny Petitioners Equal Protection of the Law*

Petitioners finally contend that section 1202.6 denies them equal protection. They argue that section 1202.1, which applies to "violent sexual offenders," limits the use of blood test information, whereas section 1202.6, which applies "to persons convicted of far less serious crimes," contains no such limitation.

Since we have previously concluded that the limitation set forth in section 1202.1 applies with equal force to section 1202.6, this contention must be rejected.

CONCLUSION

The alternative writ, having served its purpose, is discharged; the petition for peremptory writ is denied. Pending finality of this opinion, the orders

requiring testing remain stayed pursuant to the California Supreme Court's order.

Anderson, P. J., and Poché, J., concurred.

Petitioners' application for review by the Supreme Court was denied March 14, 1991.