[No. A056920. First Dist., Div. Three. Nov. 30, 1992.]

MICHAEL A. BELL, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

## COUNSEL

Daniel E. Lungren, Attorney General, Henry G. Ullerich, Assistant Attorney General, Cathy Christian, Larry G. Raskin, Jose R. Guerrero and S. Michele Inan, Deputy Attorneys General, for Defendant and Appellant.

Knutsen & Smithwick and Thomas Knutsen for Plaintiff and Respondent.

## OPINION

**CHIN, J.**—The Department of Motor Vehicles (DMV) appeals from a judgment granting respondent Michael A. Bell's petition for a writ of mandate and ordering the DMV to set aside the suspension of Bell's driving privilege. It contends that substantial evidence does not support the trial court's decision to overturn the suspension order. We agree. Therefore, we reverse and direct the trial court to deny Bell's petition.

### FACTUAL AND PROCEDURAL BACKGROUND

While on patrol, California Highway Patrol (CHP) Officer J. Perez and another officer observed Bell "come out of a club" and drive away with the car windows down and music playing at a level such that Perez could hear it from a distance of 100 feet. Perez stopped the vehicle and informed Bell that he had violated Vehicle Code section 27007, which limits the level at which a driver may play a vehicle's sound system during the vehicle's operation.[1]

During the stop, Perez observed that Bell had bloodshot eyes, slurred speech, and an odor of alcohol on his breath. Perez then conducted field sobriety tests, which Bell failed. Therefore, at approximately 2:05 a.m. on August 14, 1991, Perez arrested Bell for driving under the influence of alcohol in violation of section 23152, subdivision (a) or (b).

At the Santa Rita jail, Perez administered intoxilyzer tests to Bell at 2:36 a.m. to determine Bell's blood-alcohol concentration (BAC). The test results indicated BAC's of 0.10 and 0.09 percent respectively. Perez therefore issued an administrative per se order of suspension under section 13353.2, which requires the DMV to suspend the driving privilege of anyone who drives with a BAC of 0.08 percent or more.

Pursuant to Bell's request, the DMV held an administrative hearing regarding the suspension. The DMV submitted Perez's statement, a copy of the intoxilyzer printout, the administrative per se order of suspension, and a

---

[1]All further statutory references are to the Vehicle Code.

printout of Bell's driving record. Bell testified at the hearing that he had had difficulty with the balancing portion of the field sobriety test because of a preexisting leg injury. He believed that he had passed the other portions of the field examination. On this record, the DMV upheld the suspension.

Bell petitioned for a writ of mandate. The trial court granted the petition, finding insufficient evidence of Bell's BAC at the time of driving. It therefore entered judgment ordering that a peremptory writ issue. The DMV now appeals.

### DISCUSSION

The trial court's task in this case was to determine, using its independent judgment, whether the weight of the evidence supported the administrative decision. (*Santos* v. *Department of Motor Vehicles* (1992) 5 Cal.App.4th 537, 545 [7 Cal.Rptr.2d 10].) Our task on appeal is to determine "whether the evidence reveals substantial support, contradicted or uncontradicted, for the trial court's conclusion that the weight of the evidence does not" support the DMV's suspension order. (*Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 72-73 [64 Cal.Rptr. 785, 435 P.2d 553].) In making this determination, we must draw all legitimate and reasonable inferences in favor of the trial court's decision. (*Id.*, at p. 72; *Kerrigan* v. *Fair Employment Practice Com.* (1979) 91 Cal.App.3d 43, 52 [154 Cal.Rptr. 29].)

We agree with the DMV that the record does not contain substantial evidence to support the trial court's decision. The evidence the DMV submitted at the hearing established the following: (1) after stopping Bell for driving in violation of section 27007, Perez observed that Bell had bloodshot eyes, slurred speech, and an odor of alcohol on his breath; (2) Bell failed the field sobriety tests Perez administered; (3) Perez arrested Bell at approximately 2:05 a.m.; and (4) approximately one-half hour later, Perez administered to Bell two intoxilyzer tests, which showed BAC's of 0.10 and 0.09 percent respectively. This evidence warranted application of section 23152, subdivision (b), which establishes a rebuttable presumption that a person's BAC at the time of driving was at least 0.08 percent if a chemical test given within three hours of the driving shows a BAC of at least 0.08 percent. Bell submitted no evidence to rebut the presumption. Therefore, the DMV properly suspended Bell's driving privilege.

The trial court premised its contrary conclusion on two grounds that our appellate courts have since rejected. The trial court first found that suspension was improper because the DMV failed to produce evidence

regarding the accuracy and reliability of the intoxilyzer tests or Perez's qualifications for administering the tests. It is now well established, however, that Perez's signed report of the results of the intoxilyzer tests that he personally administered to Bell were admissible as proof of Bell's BAC without any further foundational showing, absent Bell's submission of evidence to cast doubt on those test results. (See *Davenport* v. *Department of Motor Vehicles* (1992) 6 Cal.App.4th 133, 140-143 [7 Cal.Rptr.2d 818]; *Santos* v. *Department of Motor Vehicles, supra,* 5 Cal.App.4th at pp. 542, 546-548; *Burge* v. *Department of Motor Vehicles* (1992) 5 Cal.App.4th 384, 390 [7 Cal.Rptr.2d 5].)

 The trial court also found that section 23152, subdivision (b), does not apply in administrative hearings. That subdivision provides in relevant part: "(b) . . . [¶] In any prosecution under this subdivision, it is a rebuttable presumption that the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of driving the vehicle if the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of the performance of a chemical test within three hours after the driving." Emphasizing the phrase, "In any prosecution under this subdivision," Bell argued that the presumption "is, on its own terms inapplicable to Admin Per Se hearings." In granting the petition, the trial court agreed with Bell.

In *Burge* v. *Department of Motor Vehicles, supra,* 5 Cal.App.4th at page 391, Division One of this district held to the contrary. The *Burge* court reasoned that "[s]uch a construction would . . . be contrary to the evident purpose of the Legislature in creating the presumption": to obviate the need for independent proof of a driver's BAC at the time of driving in recognition of the "fact that breath tests taken within three hours after driving accurately reflect [BAC] during driving . . . ." (*Ibid.*) It then applied the rules of statutory construction that require courts to give a statute a reasonable construction consistent with the Legislature's apparent purpose and intent and to look beyond the literal words of a statute when plain meaning leads to unreasonable results inconsistent with the Legislature's purpose. (*Ibid.,* citing *Webster* v. *Superior Court* (1988) 46 Cal.3d 338, 344 [250 Cal.Rptr. 268, 758 P.2d 596]; *Love* v. *Superior Court* (1990) 226 Cal.App.3d 736, 745 [276 Cal.Rptr. 660].) Therefore, it held "that the presumption of section 23152 applies to DMV hearings . . . ." (*Burge, supra,* at p. 391.)

Unlike the dissent, we reject Bell's contention that *Burge* is incorrect. Bell complains that *Webster* v. *Superior Court, supra,* 46 Cal.3d 338, and *Love* v. *Superior Court, supra,* 226 Cal.App.3d 736, the cases on which *Burge* relied for principles of statutory construction, do not establish that a court "may ignore the plain meaning of a statute," or "add words of significance to a

statute under the guise of legislative intent." ■ However, it has long been the rule in California that "[t]he literal language of enactments may be disregarded to avoid absurd results and to fulfill the apparent intent of the framers. [Citations.]" (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 245 [149 Cal.Rptr. 239, 583 P.2d 1281].) A statute's "[w]ords or clauses may be enlarged or restricted to effectuate the [Legislature's] intention or to harmonize them with other expressed provisions." (*In re Haines* (1925) 195 Cal. 605, 613 [234 P. 883].) " '. . . [T]he primary rule of statutory construction, to which every other rule as to interpretation of particular terms must yield, is that the intention of the legislature must be ascertained if possible, and, when once ascertained, will be given effect, even though it may not be consistent with the strict letter of the statute. . . .' " (*Dickey* v. *Raisin Proration Zone No. 1* (1944) 24 Cal.2d 796, 802 [151 P.2d 505].) Thus, "[i]n the analysis of statutes for the purpose of finding the legislative intent, regard is to be had not so much to the exact phraseology in which the intent has been expressed as to the general tenor and scope of the entire scheme embodied in the enactments. [Citation.]" (*County of Los Angeles* v. *Frisbie* (1942) 19 Cal.2d 634, 639 [122 P.2d 526].)

We think that *Burge* correctly determined that refusal to apply the presumption in administrative hearings would be contrary to the Legislature's purpose and intent. The stated need for the presumption arose from the absence in "[e]xisting law" of any "provision for the delay involved between the time a person is arrested for a DUI and when the chemical test for BAC is actually administered," of any "means to determine a person's BAC at the time the person is actually *driving* the car," or of any "mention of time parameters for the administering of chemical tests and for their admission as admissable [*sic*] evidence into a court of law." (Health & Welf. Agency, Dept. of Alcohol & Drug Programs, Enrolled Bill Rep. for Sen. Bill No. 745 (1981-1982 Reg. Sess.) Sept. 1982, original italics.) ■ Thus, in enacting the presumption, the Legislature intended (1) to "diminish the arguments that ha[d] arisen when extrapolating the [BAC] at the time of the test back to the time of the driving" (Bus. & Transportation Agency, DMV, Enrolled Bill Rep. for Sen. Bill No. 745 (1981-1982 Reg. Sess.) Sept. 1982), (2) "to close a potential loophole in the current law, whereby a person . . . could claim that he or she had consumed . . . alcohol which had not yet been absorbed into the bloodstream while the person was operating the vehicle, but which later raised the blood alcohol level" (Governor's Office, Dept. of Legal Affairs, Enrolled Bill Rep. for Sen. Bill No. 745 (1981-1982 Reg. Sess.) Sept. 1982), and (3) "to recognize that alcohol concentrations dissipate over time, so that a person whose blood alcohol levels exceed the permissible concentrations at the time of the test, was likely to have had unlawfully high blood alcohol levels when driving" (*ibid.*).

The need for the administrative per se statutes arose from the fact that "[t]he legal process leading to imposition of a suspension sometimes [took] years from the time of arrest." (Health & Welf. Agency, Dept. of Alcohol & Drug Programs, Enrolled Bill Rep. for Sen. Bill No. 1623 (1989-1990 Reg. Sess.) Sept. 1989.) "Many drivers with high chemical test results fail[ed] to have sanctions taken against their driving privilege because of reduction in charges as the result of 'plea-bargaining' or pre-trial diversion programs." (CHP Enrolled Bill Rep. for Sen. Bill No. 1623 (1989-1990 Reg. Sess.) Sept. 1989, p. 4.) In enacting the administrative per se law, the Legislature intended to establish "an expedited driver's license suspension system" (Sen. Bill No. 1623, 3d reading Sept. 13, 1989, p. 1; see 1 Sen. Final Hist. (1989-1990 Reg. Sess.) p. 1092) that would "reduce court delays. The suspension will be swift and certain and will be more effective as a deterrent . . . ." (Bus., Transportation & Housing Agency, Office of Traffic Safety, Enrolled Bill Rep. for Sen. Bill No. 1623 (1989-1990 Reg. Sess.) Sept. 1989, p. 2.)

 Nothing in this legislative history indicates that the Legislature, in enacting the administrative per se law, intended to impose different, more onerous, proof requirements for establishing a driver's BAC in administrative hearings. On the contrary, we find that the express legislative intention to provide a swifter and more effective deterrent indicates just the opposite. Given the legislative history surrounding enactment of the presumption, the Legislature must have known that failure to apply the presumption to administrative hearings would create the same proof problem that it sought to eliminate in enacting a presumption, thereby making the administrative remedy *less* effective. Thus, notwithstanding the literal words of section 23152, subdivision (b), application of the presumption in administrative hearings is necessary to effectuate the Legislature's express intent in enacting the administrative per se statutes.[2]

In support of his argument regarding the applicability of the presumption, Bell relies heavily on the Legislature's consideration in 1991 of Senate Bill No. 1186, which "sought to amend . . . [s]ection 23152(b) to add the phrase

---

[2]While acknowledging the rule that we must "look beyond the literal words of a statute when their plain meaning leads to results which are inconsistent with the intent of the legislators," the dissent finds it inapplicable because "the language of section 23152 does not conflict with the purpose of the legislation; it merely limits its application." (Dis. opn., *post*, at p. 316.) We find this analysis improperly narrow. Courts often expand a statute's coverage beyond its language where that language merely "limits" the legislative purpose, but does not "conflict" with it. (E.g., *Bliler* v. *Covenant Control Com.* (1988) 205 Cal.App.3d 18, 26-27 [252 Cal.Rptr. 50].) Moreover, given the legislative history we have discussed, we disagree with the dissent's conclusion in any event. To the extent the language of section 23152 renders the presumption inapplicable to administrative hearings, it conflicts with the Legislature's intent.

'or administrative hearing' to the first clause of the section dealing with the presumption." According to the Legislative Counsel's Digest of Senate Bill No. 1186: "Existing law . . . creates a rebuttable presumption that the driver had more than the permissible amount of alcohol in the blood if a chemical test of the blood, breath, or urine performed within 3 hours of the driving shows a blood alcohol concentration of more than the permissible limit. [¶] This bill would make this rebuttable presumption applicable also in an administrative hearing." (Legis. Counsel's Dig., Sen. Bill No. 1186 (1991-1992 Reg. Sess.).) The Legislature passed Senate Bill No. 1186, but the Governor vetoed it. (__ Sen. J. (1991-1992 Reg. Sess.) p. 4516.)

Bell contends that this statutory history supports his argument because: (1) there is no indication that the Legislature's intention regarding Senate Bill No. 1186 was simply to clarify existing law; (2) Senate Bill No. 1186 would have been "clearly a change" in existing law in that it would have "significantly expanded the application of the presumption"; (3) the Legislature's failure to override the veto "indicates an intent to leave the law unchanged"; and (4) "[t]he very fact the legislature felt compelled to attempt to amend Section 23152(b) to expand its application is the best evidence the original stature [*sic*] was not intended to have such a broad application."

We find Bell's contentions unpersuasive.[3] "Settled principles of statutory construction generally prevent deducing the intent behind one act of Congress from implications of a second act passed years later. [Citation.]" (*Galster* v. *Woods* (1985) 173 Cal.App.3d 529, 547 [219 Cal.Rptr. 500].) Moreover, "California courts have frequently noted . . . the very limited guidance that can generally be drawn from the fact that the Legislature has not enacted a particular proposed amendment to an existing statutory scheme. [Citation.] . . . 'The unpassed bills of later legislative sessions evoke conflicting inferences. Some legislators might propose them to replace an existing prohibition; others to clarify an existing permission. A third group of legislators might oppose them to preserve an existing prohibition, and a fourth because there was no need to clarify an existing permission. The light shed by such unadopted proposals is too dim to pierce statutory obscurities. As evidence of legislative intent they have little value. [Citations.]' " (*Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721, 735, fn. 7 [180 Cal.Rptr. 496, 640 P.2d 115].) Applying these rules, the Supreme Court in *Marina Point* found that the defeat of proposed legislation addressed to housing discrimination against children did not support the claim that the Unruh Act, which did not expressly list children as a protected class,

---

[3]We note that Bell's counsel represented the driver in *Burge* v. *Department of Motor Vehicles*, *supra*, 5 Cal.App.4th 384, and made these same arguments in both a petition for rehearing and a petition for review in the Supreme Court. Both petitions were denied.

did not apply to children. (*Id.*, at pp. 735-736, fn. 7; see also *Burgess* v. *Board of Education* (1974) 41 Cal.App.3d 571, 580-581 [116 Cal.Rptr. 183].)

 We similarly find that the legislative history regarding Senate Bill No. 1186 does not support Bell's claim that the presumption of section 23152, subdivision (b), does not apply to administrative hearings.[4] Therefore, the trial court erred in finding the presumption inapplicable.[5]

 Bell raises on appeal one additional argument: that section 23152, subdivision (b), is inapplicable in this case as a factual matter because "[t]he administrative record is void of evidence as to the time of driving." More specifically, he contends that Perez's statement only establishes that Perez arrested Bell at 2:05 a.m., and that "[b]ecause there is no evidence establishing the proximity between the location . . . where the driving was observed and where the stop occurred, the evidence is not susceptible to a reasonable inference that the driving and arrest took place within a brief period of time."

We reject this argument based on our review of the record. The evidence in that record shows that the CHP officers stopped Bell after observing him leave a club and drive away with the car radio playing at an illegal level, that Perez arrested him at approximately 2:05 a.m., and that Perez administered the intoxilyzer tests at 2:36 a.m., about one-half hour later. The presumption of section 23152, subdivision (b), applies so long as Perez administered the test within three hours of Bell's driving. Thus, in order to find the presumption inapplicable, we must conclude that the officers waited almost two and one-half hours after observing Bell leave the club and drive in violation of

---

[4]For the same reasons, we find the dissent's citation to Senate Bill No. 1186 and the legislative counsel's analysis of that bill unpersuasive.

[5]Application of a statutory presumption beyond its express terms is not a novel concept. In *Wilson* v. *Wilson* (1978) 78 Cal.App.3d 226 [144 Cal.Rptr. 180], the children of Lloyd Wilson alleged that Lloyd's wife, Leatrice Wilson, could not recover on Lloyd's insurance policies because she had murdered him. Leatrice countered that, under Probate Code former section 258, her jury acquittal on the murder charge established a conclusive presumption that she had not acted unlawfully. Making a contention similar to Bell's, the children argued that the statute did not apply because, by its terms, it applied only to a person's attempt " '. . . to succeed to any portion of the estate or to take under any will of the decedent . . . ,' " and only created a presumption " '. . . *for the purposes of this section.*' " (*Wilson, supra,* at p. 232, italics added by the *Wilson* court.) The appellate court found the statute applicable, reasoning: "Since [the statute] forms a statutory expression and means of applying the general public policy [that prevents one who has killed another from profiting from the wrong], all of [it] should be considered and applied in any case where that public policy is in issue. Thus, it follows that although the last sentence states a conclusive presumption 'for the purposes of *this section*' the issue of the presumption is not limited to cases of claims on estate or probate property alone but applies equally to cases of insurance claims such as at bench." (*Ibid.,* italics added by the *Wilson* court.) We reach a similar conclusion here in applying section 23152, subdivision (b), to administrative hearings.

section 27007 before arresting him. Such an inference would not be reasonable or legitimate. (See *McKinney* v. *Department of Motor Vehicles* (1992) 5 Cal.App.4th 519, 524 [7 Cal.Rptr.2d 18] [given no indication of significant delay between the observation of driving and the stop, trial court erred in finding no evidence of time of driving].)

The judgment is reversed, and the matter is remanded to the trial court with directions to deny Bell's petition and reinstate the DMV's suspension order. The DMV shall recover its costs on appeal.

Werdegar, J., concurred.

**WHITE, P. J.**—I respectfully dissent.

It is my view that the rebuttable presumption contained in Vehicle Code section 23152[1] is inapplicable to administrative hearings.

In *Burge* v. *Department of Motor Vehicles* (1992) 5 Cal.App.4th 384, 391 [7 Cal.Rptr.2d 5], Division One of this court held the section 23152 presumption was applicable to administrative proceedings. Although I followed the reasoning of *Burge* in several unpublished opinions, I now believe the reasoning of the *Burge* court was incorrect.

Department of Motor Vehicle's (DMV) administrative per se procedure of immediately suspending driving privileges is authorized by section 13353.2. Subdivision (a) of that section provides that the DMV "shall immediately suspend the privilege of any person to operate a motor vehicle if the person was driving or was in actual physical control of a motor vehicle when the person had 0.08 percent or more, by weight, of alcohol in his or her blood." Thus, the subdivision makes suspension of driving privileges dependent on a specific finding of an individual's blood-alcohol level rather than the fact that she or he may have been driving while intoxicated. One of the critical questions in DMV administrative per se suspension and revocation actions is whether the presumption contained in section 23152 is applicable to actions under section 13353.2.

In determining the intent of the Legislature on this matter I first turn to the words of the statute being construed; that is, courts must interpret the statute according to the usual, ordinary import of the language used in framing it. (*Fontana Unified School Dist.* v. *Burman* (1988) 45 Cal.3d 208, 218 [246

---

[1]All statutory references are to the Vehicle Code.

Cal. Rptr. 733, 753 P.2d 689]; *Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 658 [147 Cal.Rptr. 359, 580 P.2d 1155].) The presumption contained in section 23152 is specifically applicable to "any prosecution under this subdivision," i.e., a criminal prosecution under section 23152, subdivision (b). The majority view notwithstanding, to make the presumption applicable to administrative hearings would violate the cardinal rule that a statute "is to be interpreted by the language in which it is written, and courts are no more at liberty to add provisions to what is therein declared in definite language than they are to disregard any of its express provisions." (*People* v. *Campbell* (1902) 138 Cal. 11, 15 [70 P. 918]; see also *Wells Fargo Bank* v. *Superior Court* (1991) 53 Cal.3d 1082, 1097 [282 Cal.Rptr. 841, 811 P.2d 1025].)

The legislative history of section 23152 also reinforces my view that the Legislature did not intend to make the section's presumption applicable to administrative actions under section 13353.2. The presumption was added to the statute in 1982. (Stats. 1982, ch. 1337, § 1, p. 4961.) Thereafter, in 1989, the same year section 13353.2 was enacted, section 23152 was amended to substitute "0.08 percent" instead of "0.10 percent" wherever it appeared in subdivision (b). (Stats. 1989, ch. 479, § 3, p. 1691.) However, the limitation of the presumption to prosecutions under that subdivision was not altered. After the statute was amended again in 1990 (Stats. 1990, ch. 708, § 1, pp. 2870-2871), legislation was introduced in March of 1991 to amend section 23152 in order to make its presumption applicable to administrative hearings.[2] (Sen. Bill No. 1186 (1991-1992 Reg. Sess.).) The proposed bill, which included the amendment to section 23152, was passed by the Legislature but was returned unsigned by the Governor. (__ Sen. J. (1991-1992 Reg. Sess.) p. 4516.) Given the fact section 23152 was never amended to reflect its application to administrative hearings either at the time or after section 13353.2 was enacted, and the 1991 attempt to do so was vetoed by the Governor, we must conclude it was not the intent of the Legislature to make the statute's presumption applicable to administrative hearings.

The *Burge* court relies on *Webster* v. *Superior Court* (1988) 46 Cal.3d 338, 344 [250 Cal.Rptr. 268, 758 P.2d 596], and *Love* v. *Superior Court* (1990)

---

[2]The proposed amendment in no way claimed to be a mere clarification of existing law. (See *Tyler* v. *State of California* (1982) 134 Cal.App.3d 973, 977, fn. 2 [185 Cal.Rptr. 49].) The Legislative Counsel's Digest which accompanied the bill stated: "Existing law prohibits driving a motor vehicle under the influence of an alcoholic beverage or drug, or both, and creates a rebuttable presumption that the driver had more than the permissible amount of alcohol in the blood if a chemical test of the blood, breath, or urine performed within 3 hours of the driving shows a blood alcohol concentration of more than the permissible limit. [¶] This bill would make this rebuttable presumption applicable also in an administrative hearing." (Legis. Counsel's Dig., Sen. Bill No. 1186 (1991-1992 Reg. Sess.).)

226 Cal.App.3d 736, 745 [276 Cal.Rptr. 660], to justify its expanded reading of section 23152. Both cases stand for the proposition that courts will look beyond the literal words of a statute when their plain meaning leads to results which are inconsistent with the intent of the legislators. Here, the language of section 23152 does not conflict with the purpose of the legislation; it merely limits its application. Thus, on the basis of the clear language of the statute, its legislative history and inapplicability of *Webster* and *Love*, I find the section 23152 presumption unavailable in administrative hearings.

A petition for a rehearing was denied December 23, 1992, and respondent's petition for review by the Supreme Court was denied March 18, 1993.