[No. G012493. Fourth Dist., Div. Three. Aug. 27, 1993.]

CHARLES RAY MOSIER, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

COUNSEL

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, Henry G. Ullerich, Acting Assistant Attorney General, Martin H. Milas and Silvia M. Diaz, Deputy Attorneys General, for Defendant and Appellant.

Ronald W. Weiss for Plaintiff and Respondent.

## Opinion

**WALLIN, J.**—The Department of Motor Vehicles (DMV) appeals from a judgment granting a writ of mandate (Code Civ. Proc., § 1094.5) directing it to set aside an order suspending Charles Ray Mosier's driving privilege. Mosier's license was suspended under Vehicle Code section 13353.2, subdivision (a),[1] after he was arrested for driving with a blood-alcohol level of .08 percent or higher in violation of section 23152, subdivision (b). The DMV contends the trial court erred in concluding the subsequent dismissal of the charge was the equivalent of an acquittal under section 13353.2, subdivision (e), which requires reinstatement of his driving privilege if he was "acquitted" of the criminal charges leading to the license suspension. We reverse.

In April 1991 Mosier was arrested and charged with driving under the influence (§ 23152, subd. (a)), driving with a blood-alcohol level of .08 percent or higher (§ 23152, subd. (b)) and reckless driving (§ 23103). The DMV immediately issued an administrative order temporarily suspending his license. The DMV subsequently found Mosier had been driving with a blood-alcohol level of .08 percent or higher because his car had been observed weaving, when stopped he had bloodshot and watery eyes and smelled of alcohol, and the field breathalyzer test registered between .08 and .10 percent blood alcohol. His license was ordered suspended until May 1992. Mosier requested administrative review of the order.

In July Mosier pleaded guilty to alcohol-related reckless driving under section 23103.5, a "wet reckless," and the driving under the influence charges (§ 23152, subds. (a) & (b)) were dismissed. The prosecutor's statement of reasons for dismissing the driving under the influence counts recited, "Problems of proof: .08 breath [and] blood; rising [blood-alcohol content]; physical [and] mental problems re [field sobriety tests]" and that reckless driving was the appropriate charge. In August a notice of decision of administrative review was issued by the DMV affirming Mosier's license suspension. The trial court granted a writ of mandate directing the DMV to reinstate his license. DMV appeals.

The DMV contends the trial court erred in directing it to reinstate Mosier's license. It argues dismissal pursuant to a plea bargain of the section 23152, subdivision (b) charge is not an acquittal as contemplated by section 13353.2, subdivision (e) requiring reinstatement. Because the resolution of this issue depends upon the interpretation of the term "acquittal" as used in the statute, it is a question of law to be reviewed de novo. (*Claxton v. Zolin* (1992) 8 Cal.App.4th 553, 558 [10 Cal.Rptr.2d 319].)

---

[1]All statutory references are to the Vehicle Code.

■ To put the issue in its proper context, we briefly summarize the administrative procedure. Section 13353.2, subdivision (a) instructs the DMV to suspend the license of any person driving a motor vehicle with .08 percent or higher blood-alcohol level. The suspension is initiated when a peace officer confiscates the driver's license, gives notice of the suspension order and issues a temporary 45-day driving permit. (§ 13353.2, subds. (a) & (b); § 23158.5, subds. (a) & (b).) The DMV automatically reviews the suspension order and must sustain the order if it finds by a preponderance of the evidence the arresting officer had reasonable cause to believe the person was driving under the influence, was placed under arrest and was driving with a blood-alcohol content of .08 percent or higher. (§ 13557, subd. (b)(2).) The suspended driver may request an administrative hearing and judicial review of an adverse ruling. (§§ 13558, 13559.)

The administrative suspension of driving privileges "is a civil matter which is independent of the determination of the person's guilt or innocence . . . in the criminal proceeding." (§ 13353.2, subd. (e).) However, "If a person is *acquitted* of criminal charges relating to a determination of facts under subdivision (a), the [DMV] shall immediately reinstate the person's privilege to operate a motor vehicle." (*Ibid.* Italics added.)

On appeal, the DMV contends the dismissal of charges, pursuant to a plea bargain, that a person was operating a motor vehicle with a .08 percent or higher blood-alcohol level can never be the equivalent of an acquittal as contemplated by section 13353.2, subdivision (e).

■ Principles of statutory interpretation require we determine legislative intent so the purpose of the law may be effectuated. (*Pollack* v. *Department of Motor Vehicles* (1985) 38 Cal.3d 367, 372 [211 Cal.Rptr. 748, 696 P.2d 141].) "In determining such intent, we must turn first to the words themselves, giving them their ordinary and generally accepted meaning. [Citation.] The words must be read in light of the legislative objective sought to be achieved, as well as the evil sought to be averted. [Citation.]" (*Nick* v. *Department of Motor Vehicles* (1993) 12 Cal.App.4th 1407, 1414 [16 Cal.Rptr.2d 305].) ■ The purposes of the administrative suspension procedure are threefold: (1) to make highways safe by quickly suspending the driving privileges of persons driving with excessive blood-alcohol levels; (2) to minimize erroneous license suspension by providing prompt administrative review; and (3) to place no restrictions on the prosecution of criminal drunk driving charges. (*Claxton* v. *Zolin, supra,* 8 Cal.App.4th at p. 560.)

The administrative procedure resulted from the Legislature's frustration that " '[t]he legal process leading to imposition of a [license] suspension

sometimes [took] years from the time of arrest[,]' " and from frustration with the fact that " '[m]any drivers with high chemical test results fail[ed] to have sanctions taken against their driving privilege because of reduction in charges as the result of "plea-bargaining" or pre-trial diversion programs.' " (*Bell* v. *Department of Motor Vehicles* (1992) 11 Cal.App.4th 304, 312 [13 Cal.Rptr.2d 830].)

The history of the acquittal language in the statute is interesting. In the original version of section 13353.2, there was no provision for reinstatement of a driving privilege after an acquittal. (Sen. Bill No. 1623 (1989-1990 Reg. Sess.) § 4.) The language contained in subdivision (e) appears for the first time following the August 21, 1989, amendment of the bill in the Assembly, after objections to the bill were lodged by the Teamsters Union on the grounds that license suspension would still occur "even if the driver [was] not convicted." (Assem. Com. on Public Safety, Leg. Bill File on Sen. Bill No. 1623, letter of July 14, 1989, to Assem. Public Safety Com. from Gerald O'Hara, Director, Cal. Teamsters Public Affairs Council.) Although it continued to oppose the bill for other reasons, the Teamsters' objection on this ground appears to have been withdrawn after the addition of the acquittal language. (See Sen. Rules Com. Rep. (Sept. 13, 1989) p. 4.)

It is reasonable to conclude the acquittal language was added in response to the Teamsters' concerns. This might suggest that *any* disposition of the driving under the influence charge, other than a conviction, should result in reinstatement. But had the Legislature intended such a rule, it could easily have said so. It did not. ■ Instead the statute provides only that a license must be reinstated if there is an acquittal.

Several cases have recently considered the "acquittal" language of section 13353.2, subdivision (e) and have concluded that acquittal means a disposition on the merits, not simply a disposition which precludes further criminal prosecution on the section 23152, subdivision (b) charges. (*Claxton* v. *Zolin*, *supra*, 8 Cal.App.4th at p. 561; *Helmandollar* v. *Department of Motor Vehicles* (1992) 7 Cal.App.4th 52, 56 [9 Cal.Rptr.2d 155]; *Agresti* v. *Department of Motor Vehicles* (1992) 5 Cal.App.4th 599, 607 [7 Cal.Rptr.2d 353].) *Agresti* explained that while a dismissal can be based on the merits of the case, procedural reasons, or simply in furtherance of justice, an acquittal connotes a disposition on the merits. (*Agresti* v. *Department of Motor Vehicles*, *supra*, 5 Cal.App.4th at p. 604.) In *Agresti*, the record did not indicate why the driving under the influence charges had been dismissed. The court, therefore, concluded the dismissal could not be considered an acquittal. (*Ibid.*)

In *Claxton* v. *Zolin*, *supra*, 8 Cal.App.4th 553, the driver pleaded guilty to reckless driving and the prosecutor stipulated " '. . . the probabilities favor

that [the driver's] blood alcohol level was below a .08 at the time of driving.' " (*Id.* at p. 557.) Based on the stipulation, the trial court specifically found the driver not guilty of driving with a blood-alcohol level of .08 percent or more. In concluding this was an acquittal for the purposes of section 13353.2, subdivision (e), the court held, "Regardless whether the judge's ruling was based on adversarial litigation or a factual stipulation of the parties, the ruling constituted a disposition of the criminal charge on the merits." (*Claxton* v. *Zolin, supra,* 8 Cal.App.4th at p. 562.)

In *Helmandollar* v. *Department of Motor Vehicles, supra,* 7 Cal.App.4th 52, the drivers were charged with driving under the influence (§ 23152, subd. (a)) and driving with a blood-alcohol level of .08 percent or more (§ 23152, subd. (b)). The prosecution believed it was unable to prove the drivers had a blood-alcohol level of .08 percent or more. The drivers submitted that charge to the trial court on a factual stipulation and the trial court made a specific finding of not guilty on driving with a blood-alcohol level of .08 percent or more. The general driving under the influence charge was amended to a wet reckless to which the drivers pleaded no contest. (*Helmandollar* v. *Department of Motor Vehicles, supra,* 7 Cal.App.4th at p. 55.) Despite the not guilty finding on the charge of driving with a blood-alcohol level of .08 percent or more, the DMV refused to reinstate the drivers' licenses. The trial court denied a writ of mandate. The appellate court reversed. (*Id.* at p. 57.) It reasoned that while there had been a plea bargain as to the driving under the influence charge, the drivers had been found not guilty of driving with a blood-alcohol level of .08 percent or more, the charge supporting the license suspension. The not guilty finding was an acquittal and the drivers were entitled to have their licenses reinstated. (*Id.* at p. 57.)

Most recently, *Snow* v. *Department of Motor Vehicles* (1993) 17 Cal.App.4th 230 [21 Cal.Rptr.2d 68] held the dismissal of criminal charges after a jury was unable to reach a verdict was not an acquittal. The court noted that "[i]nherent in an acquittal is a factual determination in favor of the defendant" and the trial court may well have dismissed the charges in the interest of justice regardless of guilt. (*Id.* at p. 233.)

Here there was no resolution of the section 23152, subdivision (b) charge on its merits. Rather there was a simple dismissal after a plea bargain reducing the charges, exactly the scenario that prompted the Legislature to enact the administrative suspension procedure in the first place. (See *Bell* v. *Department of Motor Vehicles, supra,* 11 Cal.App.4th at p. 312.) In *Claxton* and *Helmandollar* specific findings of not guilty of driving with a blood-alcohol level of .08 percent or more were made after stipulations that the

driver did not have a blood-alcohol level of .08 percent or more. No such finding was made here. Although the prosecution indicated problems with proof, there was no resolution *on the merits*. The prosecutor's statements are not the equivalent of a factual finding by the trial court that Mosier was not guilty of driving with a blood-alcohol level of .08 percent or more.[2]

Mosier argues that interpreting the term "acquittal" to require a disposition on the merits, and an actual not guilty finding, rather than a mere dismissal barring further prosecution, will result in a waste of judicial resources. He suggests that in every case where the prosecution finds itself unable to prove the charge and chooses to dismiss, the defendant will have to refuse the dismissal and demand a full adversarial trial so that he or she may be acquitted. That is simply untrue. As in *Claxton* or *Helmandollar* there need only be a stipulation between the parties as to the facts and a request that a not guilty finding be entered. (See *Claxton* v. *Zolin, supra,* 8 Cal.App.4th at p. 562; *Helmandollar* v. *Department of Motor Vehicles, supra,* 7 Cal.App.4th at p. 55.) The procedure would be no more time-consuming than what already occurred in this case.

The judgment is reversed.

Sills, P. J., and Crosby, J., concurred.

---

[2]There are cases in which a dismissal of criminal charges after a specific factual ruling by the trial court may well require reinstatement of a license because the factual ruling relates to the facts underlying the DMV suspension. For example, in *Mood* v. *Pierce* (Cal.App.), the court held the dismissal of charges was an acquittal when it occurred after a contested evidentiary hearing on a motion to suppress at which the court found no probable cause for the driver's detention. The *lawful* arrest of the driver is a requirement for the administrative suspension (§ 13557) and the court concluded the DMV was bound by the trial court's determination of this fact. (*Mood* v. *Pierce* (Cal.App.). See also *Agresti* v. *Department of Motor Vehicles, supra,* 5 Cal.App.4th at pp. 604-605, fn. 2.) However, this is not such a case because there were no factual findings.