Filed 11/5/14  Gildsdorf v. Department of Motor Vehicles CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| BENJAMIN A. GILDSDORF, | |
| Plaintiff and Appellant, | E058683 |
| v. | (Super.Ct.No. INC1208972) |
| DEPARTMENT OF MOTOR VEHICLES, | **OPINION** |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Harold W. Hopp, Judge.  Affirmed.

Law Offices of Kenneth C. Gregory and Kenneth C. Gregory, for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Alicia M. B. Fowler, Senior Assistant Attorney General, Chris A. Knudsen, and Terry R. Price, Deputy Attorneys General, for Defendant and Respondent.

1

At about 1:00 a.m. on October 12, 2012, Benjamin A. Gilsdorf[1] was found passed out in his truck blocking a driveway of a business with the engine still running. Gilsdorf's blood alcohol content (BAC) was tested one hour later and determined to be at 0.17 percent. After an administrative hearing, the Department of Motor Vehicles (the Department) suspended his driver's license, finding he had driven a motor vehicle while having a BAC of 0.08 percent or more within the meaning of Vehicle Code section 13353.2, subdivision (a)(1). The trial court denied Gilsdorf's petition for writ of mandate challenging the suspension.

Gilsdorf appeals the suspension. He argues that (1) admission of the blood analysis report was error because it was prepared one week after the blood was tested; (2) admission of the unsworn police report was error; and (3) reliance on the three-hour presumption that he had a BAC of 0.08 percent or higher when he was driving was error because there was no evidence of driving or the time he was driving.[2]

We affirm the trial court's order upholding the Department's suspension of Gilsdorf's license.

---

[1] He is also referred to in the record as "Gildsdorf" but he insists the correct spelling is Gilsdorf.

[2] Vehicle Code section 23152, subdivision (b), states, "[I]t is a rebuttable presumption that the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of driving the vehicle if the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of the performance of a chemical test within three hours after the driving."

I

FACTUAL AND PROCEDURAL BACKGROUND

According to the sworn police report submitted on a DS-367 form, to which Gilsdorf has no objection on appeal, on October 12, 2012, at 1:12 a.m., Officer Mabanag of the Indio Police Department responded to the location of 46920 Jefferson Street in Indio. It was reported that a pickup truck was blocking the driveway of one of the businesses. When Officer Mabanag arrived, he found Gilsdorf asleep behind the steering wheel. Officer Mabanag reported that Gildsdorf had been asleep for about one hour. The engine was still running. Officer Mabanag woke up Gilsdorf. He had bloodshot, watery eyes. There was a strong odor of alcohol coming from the truck, his breath and his person. Gilsdorf's speech was slurred and his balance was poor. Gilsdorf was arrested for driving with a BAC of 0.08 percent or higher which resulted in an automatic suspension of his license.

Gilsdorf requested an administrative per se hearing to contest the suspension of his license. The hearing was conducted on November 20, 2012. The hearing officer had the dual role of representing the Department and deciding the matter. Gilsdorf was represented by counsel. At the hearing, the Department marked Exhibit 1, which was Officer Mabanag's sworn statement, as outlined, *ante*. Exhibit 2 was a police report completed by Officer Mabanag one week after the incident. Exhibit 3 was a forensic

3

alcohol analysis report (forensic report) prepared by Riverside Laboratory which found

Gilsdorf's BAC was 0.17 percent.[3]

Gilsdorf's counsel objected to the admission of the exhibits. Gilsdorf's counsel objected to Exhibit 2 on "hearsay" and "foundational" grounds. Counsel noted that the report was written on October 19, 2012, but the arrest was made on October 12, 2012. He argued, "the requirements of Evidence Code 1280 timeliness is the subject should be able to - - the (inaudible) was made at or near the time of the accusation or event." Counsel relied upon *Glatman v. Valverde* (2006) 146 Cal.App.4th 700 (*Glatman*) and argued, "So the arrest report being seven days, seven days - - so written seven days after the fact is untimely, and it's not admissible pursuant to 1280 in *Glatman v. Valverde*."

As for Exhibit Number 3, Gilsdorf's counsel objected on "hearsay" and "foundation" grounds. He argued the test on Gilsdorf's blood was untimely because the forensic report showed that the day of the analysis of the blood was on October 23, 2012, but the report was prepared on October 31. It was hearsay because it was untimely prepared. Counsel additionally argued that it was not admissible as follows: "There's no evidence that the person that took this test - - on the bottle labeled is Aaron Marshall as the criminalist who's qualified to examine the blood and render a report as to the alcohol level in the blood. [¶] Under Title 17 only specific people can give an exam, and that would be forensic alcohol analysis, or forensic alcohol supervisor. There is no evidence

---

[3]    The contents of these exhibits will be discussed in more detail, *post*.

4

that a technician is qualified to render the report.  Therefore, it lacks foundation, and it's also inadmissible."

The hearing officer did not rule on the objections at that time but took the issue under submission.  No sworn testimony was presented.  Gilsdorf's counsel also argued there was no evidence that Gilsdorf was driving because there was no evidence of volitional movement of the vehicle.

On November 29, 2012, the hearing officer issued her findings.  The findings of fact as to driving were that Gilsdorf admitted to Officer Mabanag that he had been driving and based on his high BAC, the three-hour presumption of driving under Vehicle Code section 23152, subdivision (b) had not been rebutted.[4]  The hearing officer found as to the chemical test, "As based on the lack of sufficient evidence to rebut the chemical test results, it is hereby determined that [Gilsdorf] submitted to and completed a chemical test of his blood, with a result of 0.17% B.A.C. at 01:51 AM on 10/12/12."  The hearing officer also noted that Gilsdorf did not present any affirmative evidence that he was not driving within the three hours.  It concluded, "The Department may reasonably infer the time of driving from the facts in evidence.  In that, [Gilsdorf] was found leaning up [sic] the driver's window asleep, the vehicle park [sic] blocking the exit of the Valley Animal Clinic, the engine was running and [Gilsdorf] stated he was tired, just resting and would be driving home soon.  It is reasonable to infer the time between driving, and the arrival of the officer, was very short.  Additionally, there is no evidence showing delay from the

_____

[4]    The finding of fact that defendant had admitted driving was erroneous as the police report clearly states that Gilsdorf denied he was driving.

5

time of the dispatch call, to the time of the chemical test; therefore, the three hour presumption has not been rebutted."

Gilsdorf challenged the decision by filing a petition for writ of mandate on December 21, 2012. He again argued that the documents presented were hearsay and lacked foundation. Once again he argued that there was no evidence as to either the fact or time of driving, the unsworn statement of Officer Mabanag should not have been admitted, and the BAC results should have been excluded.

A hearing on the petition was conducted in the trial court on April 8, 2013. The trial court initially expressed concern that the evidence of driving was "vague" and it was unclear if driving occurred three hours prior to the chemical test. The trial court then noted that it had not realized that the engine in the truck was still running when Officer Mabanag arrived at the scene. The trial court noted that "[b]ecause how long would the engine run? Wouldn't you sort of run out of gas after a while? And that does tend to support the inference that there had been driving not long before." Gilsdorf's counsel argued that the hearing officer chose to take the shortcut that there was a three-hour presumption of driving. However, counsel argued that the Department could not prevail on the presumption without meeting the statutory prerequisite that the time of driving was established.

Counsel for the Department argued that circumstantial evidence supported that Gilsdorf was driving with a BAC of 0.08 percent or higher. Gilsdorf's counsel argued that there was no evidence of dissipation of the alcohol presented by the Department.

6

The trial court responded that it was not a reasonable inference that he had less than a 0.08 percent BAC when driving when two hours later he had a 0.17 percent BAC.

The trial court denied the petition for writ of mandate as will be discussed in more detail, *post*. Judgment was entered on May 7, 2013.

II

RELEVANT LAW AND STANDARD OF REVIEW

"[A] person arrested for driving under the influence of alcohol, and who is determined to have a prohibited amount of alcohol in his or her blood, must have driving privileges suspended prior to an actual conviction for a criminal offense." (*Lake v. Reed* (1997) 16 Cal.4th 448, 454 (*Lake*).) The statutory procedure for such a suspension prior to a criminal conviction is called the "'administrative per se'" law. (*Ibid.*) The licensee may request an administrative hearing on the merits of the suspension. (Veh. Code, § 13558, subd. (a).)

An administrative hearing before the Department "does not require the full panoply of the Evidence Code provisions used in criminal and civil trials." (*Petricka v. Department of Motor Vehicles* (2001) 89 Cal.App.4th 1341, 1348.) At the administrative hearing, the Department "shall consider its official records and may receive sworn testimony." (Veh. Code, § 14104.7.) Government Code section 11513 addresses the admission of evidence generally in administrative hearings. (*Lake, supra*, 16 Cal.4th at p. 458; *Molenda v. Department of Motor Vehicles* (2009) 172 Cal.App.4th 974, 987.) That section provides in pertinent part as follows: "The hearing need not be conducted according to technical rules relating to evidence and witnesses, except as hereinafter

7

provided.  Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions." (Gov.Code, § 11513, subd. (c).)  "Hearsay evidence may be used for the purpose of supplementing or explaining other evidence but over timely objection shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions.  An objection is timely if made before submission of the case or on reconsideration." (*Id.* at subd. (d).)

"In this hearing, the DMV bears the burden of proving by a preponderance of the evidence certain facts, including that the driver was operating a vehicle with a blood-alcohol level of 0.08 percent or higher.  [Citations.]" (*Manriquez v. Gourley* (2003) 105 Cal.App.4th 1227, 1232; see also *Lake, supra,* 16 Cal.4th at pp. 455-456, 463 [in order to sustain an order of suspension, the Department must prove at the hearing, by a preponderance of the evidence that (1) the peace officer had reasonable cause to believe that the licensee had been driving a motor vehicle with a BAC of 0.08 percent or more; (2) the licensee was placed under arrest; and (3) the licensee was driving a motor vehicle when he or she had 0.08 percent or greater BAC].)  "The DMV may satisfy its burden via the presumption of Evidence Code section 664.[5]  [Citation.]" (*Manriquez, supra,* at p. 1232.)

---

[5]     Evidence Code section 664 states that "[i]t is presumed that official duty has been regularly performed."

8

Vehicle Code section 13559, subdivision (a) allows the licensee to file for review in the superior court if he is unsuccessful at the administrative hearing. In reviewing the matter, "If the court finds that the [D]epartment exceeded its constitutional or statutory authority, made an erroneous interpretation of the law, acted in an arbitrary and capricious manner, or made a determination which is not supported by the evidence in the record, the court may order the [D]epartment to rescind the order of suspension or revocation and return, or reissue a new license to, the person." (*Ibid*.) The "court is required to determine, based on its independent judgment, '"whether the weight of the evidence supported the administrative decision."'" [Citation.]" (*Lake, supra,* 16 Cal.4th at pp. 456-457.) "The administrative findings come before the superior court with a 'strong presumption of correctness,' and the burden rests on the petitioner to establish administrative error. [Citation.]" (*Hildebrand v. Department of Motor Vehicles* (2007) 152 Cal.App.4th 1562, 1568.)

On appeal, we review the record to determine whether the trial court's findings are supported by substantial evidence. (*Lake, supra,* 16 Cal.4th at p. 457.) We resolve all evidentiary conflicts and draw all legitimate and reasonable inferences in favor of the trial court's decision. (*Ibid*.) Where the evidence supports more than one inference, we do not substitute our judgment for the trial court's. (*Ibid*.) We may overturn the trial court's factual findings only if the evidence before the trial court is insufficient as a matter of law to sustain those findings. (*Ibid.*)

FORENSIC REPORT

Gilsdorf first contends that admission of the forensic report showing he had a BAC of 0.17 percent should have been excluded because (1) the report was not admissible as a public record under Evidence Code section 1280 because it was not created at or near the time of the event; and (2) it was not performed by a person qualified under Title 17 of the California Code of Regulations.

A.      *Additional Factual Background*

According to the forensic report, the blood sample was received by Riverside Laboratory on October 17, 2012.  The "DATE ANALYSIS COMPLETE" was "10/23/2012."  The "DATE OF REPORT" was "10/31/2012."  It was signed by Aaron Marshall who was a "criminalist."  The report provided a result that Gilsdorf had a BAC of 0.17 percent.  The report included the following declaration:  "I, the undersigned, declare under penalty of perjury.  (1) I am employed by the State of California, Department of Justice, Bureau of Forensic Services (BFS); (2) I am qualified to engage in forensic alcohol analysis as a Forensic Alcohol Supervisor, Analyst, or as a Trainee under supervision pursuant to Title 17 of the CA Code of Regulations;[6] (3) I performed an

---

**6**      "Title 17 establishes the procedures for determining 'the concentration of ethyl alcohol in samples of blood, breath, urine, or tissue of persons involved in traffic accidents or traffic violations.'"  (*Hernandez v. Gutierrez* (2003) 114 Cal.App.4th 168, 172.)

analysis of the material described above during the regular course of my duties according to approved laboratory procedures; (4) The recording of the analytical results was done at the time the analysis was performed and included creation of contemporaneous documentation; (5) Any opinions, interpretations, or conclusions in this report are based upon data in the associated laboratory case record; (6) This laboratory report has been prepared and retained by BFS in the normal course of business according to BFS's regular practices and procedures. This Laboratory is accredited by American Society of Crime Laboratory Directors/Laboratory Accreditation Board."

The hearing officer ruled as to the BAC test, "As based on the lack of sufficient evidence to rebut the chemical test results, it is hereby determined that Respondent submitted to and completed a chemical test of his blood, with a result of 0.17% B.A.C. at 1:51 AM on 10/12/12." The trial court did not address the admissibility of the report but relied on it in upholding the suspension.

B.      *Analysis*

Gilsdorf contends the report was inadmissible because it did not qualify as an exception under Evidence Code section 1280.

Evidence Code section 1280 makes admissible a writing made to record an act, condition or event if the writing "was made by and within the scope of duty of a public employee," "at or near the time of the act, condition, or event," and "[t]he sources of information and method and time of preparation were such as to indicate its trustworthiness." It is clear that a forensic laboratory report falls within the public

11

employees' record exception to the hearsay rule under Evidence Code section 1280. (*Lake, supra,* 16 Cal.4th at p. 467.)

"'Evidence Code section 664 creates a rebuttable presumption that blood-alcohol test results recorded on official forms were obtained by following the regulations and guidelines of title 17.  [Citations.]  . . . The recorded test results are presumptively valid and the DMV is not required to present additional foundational evidence.  [Citation.]' [Citation.]" (*Manriquez v. Gourley, supra,* 105 Cal.App.4th at pp. 1232-1233.)

Gilsdorf insists that the forensic report did not meet the prong that it was made "at or near the time of the act."  However, this ignores Marshall's declaration under penalty of perjury that the results of the blood analysis were documented at the time analysis was completed.  Gilsdorf provided no affirmative evidence to dispute this declaration. Moreover, to the extent that there is a possible conflict in the document, we resolve all evidentiary conflicts and draw all legitimate and reasonable inferences in favor of the trial court's decision.  (*Lake, supra,* 16 Cal.4th at pp. 456-457.)  Here we accept Marshall's declaration made under penalty of perjury that she documented the test results at the time of the analysis.  It is reasonable to infer that the report was later made based on that documentation.  In other words, she performed her official duty and the presumption under Evidence Code section 664 applies.

Gilsdorf relies upon *Glatman v. Valverde, supra,* 146 Cal.App.4th 700.  In *Glatman,* a motorist's blood sample was analyzed two times by different analysts.  (*Id.* at p. 702.)  Both analysts signed the alcohol analysis report, which was dated one week after the first test was done.  (*Ibid*.)  The motorist argued the report was untimely prepared.

12

The Department argued that the analysts entered the test results into the laboratory's computer database shortly after completing each test and that the preparation of the report one week later simply involved retrieving the data from the database. (*Id.* at p. 703.) The appellate court disagreed and observed that the record was silent regarding the procedures that the analysts used to record their test results. Further, there was no evidence that the test results were recorded in a computer database or anywhere else before the report was prepared. (*Id.* at p. 704.) The court held that the case presented a "'danger of inaccuracy by lapse of memory,' [citation]" and held that the trial court did not abuse its discretion when it found that the forensic report was not prepared at or near the time of the recorded event. (*Ibid.*)

Here, unlike in *Glatman*, it is reasonably inferred that the results were recorded or documented at the time of the test and were memorialized in the report several days later. Marshall attested that "[t]he recording of the analytical results was done at the time the analysis was performed and included creation of contemporaneous documentation." It is reasonably inferred the report was made by transferring that documentation to the report. (*Glatman, supra,* 146 Cal.App.4th at p. 705 ["[A]n inference may be drawn only if the 'proposed conclusion is a reasonable, logical, and nonspeculative deduction from the facts proved.' [Citation.]"].)

Gilsdorf additionally claims that the forensic alcohol report should have been excluded because Marshall was not qualified to conduct the test. This claim is equally unavailing. Gilsdorf, relying on *Furman v. Department of Motor Vehicles* (2002) 100

13

Cal.App.4th 416 (*Furman*), claims that a criminalist is not qualified to conduct forensic alcohol analysis.

"'Forensic alcohol analysis shall be performed only by persons who meet the qualifications set forth in these regulations for forensic alcohol supervisors, forensic alcohol analysts, or forensic alcohol analyst trainees [working under the supervision of a forensic alcohol supervisor or forensic alcohol analyst].' [Citation.]" (*Furman, supra,* 100 Cal.App.4th at p. 423, italics omitted.) In *Furman,* the court held that a "Criminalist" title does not carry with it an inference that its holder "has an 'official duty' to perform and record the results of a forensic alcohol analysis," based on the exclusion of criminalists from title 17. (*Furman,* at p. 422.) The court concluded that without proof that the person was qualified under title 17 the report was not admissible under Evidence Code section 1280. (*Id.* at p. 423.)

However, *Furman* does not stand for the proposition that title 17 precludes a criminalist from having the official duty of performing forensic alcohol analysis. In *Furman*, there was no additional evidence other than that the person signed the report and stated that she was a "criminalist." (*Furman, supra,* 100 Cal.App.4th at p. 419.) On the other hand, here, Marshall attested that "I am qualified to engage in forensic alcohol analysis as a Forensic Alcohol Supervisor, Analyst, or as a Trainee under supervision pursuant to Title 17 of the CA Code of Regulations; . . ." This was sufficient to show that in addition to being a criminalist, she met the qualifications of a forensic alcohol analyst, supervisor or trainee under supervision. As such, the presumption under Evidence Code section 664 that the analyst performed his or her official duty in preparing the report

14

applied and it was admissible under Evidence Code section 1280. The hearing officer and trial court properly considered the forensic alcohol analysis report.

IV

UNSWORN POLICE REPORT

Gilsdorf also contends that Exhibit 2, the unsworn statement of Officer Mabanag, was improperly admitted at the hearing. Similar to the previous argument, he claims that since the report was prepared one week after the incident occurred, it was not admissible as a public employee record under Evidence Code section 1280.

Vehicle Code section 13380, subdivision (a) provides that an arresting officer must submit to the Department a sworn report of "all information relevant to the enforcement action." Vehicle Code section 13557, subdivision (a) directs the Department to take into account in deciding to suspend a person's license the sworn report and "any other evidence accompanying the report."

In *MacDonald v. Gutierrez* (2004) 32 Cal.4th 150, 159, the court concluded that under the above-mentioned statutory scheme, the Department could consider the arresting officer's sworn and unsworn reports at the suspension hearing. It concluded, "'A police officer's report, even if unsworn, constitutes "the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs.'" [Citation.] Again, too, we must not lose sight of the reason for the 'slight relaxation of the rules of evidence

15

applicable to an administrative per se review hearing[.]'**7** . . . [¶][S]o long as a sworn

report is filed, it is consistent with the relaxed evidentiary standards of an administrative

per se hearing that technical omissions of proof can be corrected by an unsworn report

filed by the arresting officer." (*Id.* at p. 159.)

Moreover, the Department may use hearsay evidence "for the purpose of

supplementing or explaining other evidence. . . ." (Gov.Code, § 11513, subd. (d).) As

such, the unsworn report prepared by Officer Mabanag and admitted at the hearing was

admissible to help explain the sworn statement.

Gilsdorf's argument relies on his assumption that the unsworn report must also be

admissible under Evidence Code section 1280 (which he claims it was not) despite

Vehicle Code section 13557, subdivision (a) and Government Code section 11513,

subdivision (d). The unsworn report was sufficiently timely as to qualify under Evidence

Code section 1280.

""How soon a writing must be made after the act or event is a matter of degree

and calls for the exercise of reasonable judgment on the part of the trial judge.'"

[Citation.] '[T]he timeliness requirement "is not to be judged . . . by arbitrary or artificial

time limits, measured by hours or days or even weeks."' [Citation.] Rather, "account

must be taken of practical considerations," including "the nature of the information

recorded" and "the immutable reliability of the sources from which [the information was]

drawn." [Citation.] "Whether an entry made subsequent to the transaction has been

---

**7** The purpose is to immediately protect the public from the potential that the motorist may again drive drunk. (*Lake, supra,* 16 Cal.4th at p. 462.)

made within a sufficient time to render it within the [hearsay] exception depends upon whether the time span between the transaction and the entry was so great as to suggest a danger of inaccuracy by lapse of memory."' [Citation.]" (*Molenda v. Department of Motor Vehicles, supra,* 172 Cal.App.4th at p. 989.)

Here, the unsworn statement prepared by Officer Mabanag on October 19, 2012, closely mirrored the sworn statement prepared on October 12, 2012. There was no danger of inaccuracy by lapse of memory based on the similarity to the sworn statement and it was completed within a week of the incident. Accordingly, the hearing officer and trial court properly considered Officer Mabanag's unsworn police report.

V

PRESUMPTION OF DRIVING

Gilsdorf finally contends that the hearing officer erroneously relied on the three-hour presumption of driving with a BAC of over 0.08 percent pursuant to Vehicle Code section 23152, subdivision (b) because the time of driving was not adequately established.

A.    *Additional Factual Background*

It was undisputed that Officer Mabanag did not observe Gilsdorf driving the truck. At the hearing, the Department relied upon the sworn and unsworn statements of Officer Mabanag to support that he was driving and the time of driving. According to the reports, Officer Mabanag was dispatched to 46920 Jefferson Street at 12:44 a.m. because a witness had called to report that a man was passed out in his vehicle which was blocking an exit. The witness indicated that the man had been in the truck for about an

17

hour and told the reporting person he was taking a nap. Officer Mabanag arrived and found the truck was blocking the exit of the Valley Animal Clinic. Gilsdorf was leaning against the window. The engine on the truck was running and the truck was faced toward the exit. Officer Mabanag had to knock loudly on the window for several seconds in order to get Gilsdorf to wake up. Gilsdorf told him he was tired and that he was just resting. He was planning to drive home soon.

Gilsdorf told Officer Mabanag that he had drank beers at a location in Indio and another in Cathedral City. When asked if he was driving, he responded that he felt he was being "entrapped" to admit he was driving. He denied that he had been driving but did not explain how his truck got to the parking lot of the Valley Animal Clinic. Gilsdorf was arrested at 1:12 a.m. A nurse drew his blood at 1:51 a.m. Hence, the time period according to the documents was that at 12:44 a.m., Officer Mabanag was dispatched to the location; a witness stated Gilsdorf had been at the location for about one hour; his blood was drawn at 1:51 a.m.

The hearing officer concluded that a preponderance of the evidence established that Gilsdorf had been driving with a BAC higher than 0.08 percent. The hearing officer concluded, "The Department may reasonably infer the time of driving from the facts in evidence. In that, [Gilsdorf] was found leaning up [sic] the driver's window asleep, the vehicle park [sic] blocking the exit of the Valley Animal Clinic, the engine was running and [Gilsdorf] stated he was tired, just resting and would be driving home soon. It is reasonable to infer the time between driving, and the arrival of the officer, was very short.

18

Additionally, there is no evidence showing delay from the time of the dispatch call, to the time of the chemical test; therefore, the three hour presumption has not been rebutted."

In upholding the findings, the trial court found, "As [Gilsdorf] correctly argues at the start of his opening brief, the Court must independently evaluate the evidence . . . Here, even if the statutory presumption does not apply because of the lack of evidence that [Gilsdorf] was driving within three hours before his blood was drawn, there is still considerable evidence that [Gilsdorf]'s blood alcohol content was greater than .08 when he was driving. As [Gilsdorf]'s counsel argued at the hearing on the petition, it is possible that [Gilsdorf] consumed a great deal of alcohol just before he was driving and that his blood alcohol level, although rising, had not yet passed .08 before he stopped at the location the citizen reported him to be napping. However, given that he apparently had nothing to drink for over two hours before his blood was drawn and that his blood alcohol level was .17 when drawn, this possibility is only theoretical. The only reasonable interpretation of the evidence is that [Gilsdorf]'s blood alcohol level was higher — probably much higher — than .08 when he was driving. Accordingly, the petition is denied."

B.      *Analysis*

Vehicle Code section 23152, subdivision (b) provides that when a chemical test is performed within three hours of driving and it shows a BAC of 0.08 percent or greater, there is a rebuttable presumption that the licensee had a 0.08 percent or more BAC at the time of driving. In *Bell v. Department of Motor Vehicles* (1992) 11 Cal.App.4th 304 (*Bell*), the court explained the legislative intent behind the section 23152, subdivision (b)

19

presumption:  "[I]n enacting the presumption, the Legislature intended (1) to 'diminish the arguments that ha[d] arisen when extrapolating the [BAC] at the time of the test back to the time of the driving' [citation], (2) 'to close a potential loophole in the current law, whereby a person . . . could claim that he or she had consumed . . . alcohol which had not yet been absorbed into the bloodstream while the person was operating the vehicle, but which later raised the blood alcohol level' [citation], and (3) 'to recognize that alcohol concentrations dissipate over time, so that a person whose blood alcohol levels exceed the permissible concentrations at the time of the test, was likely to have had unlawfully high blood alcohol levels when driving' [citation]."  (*Bell,* at p. 311.)

The effect of a presumption affecting the burden of producing evidence is to require the "trier of fact to assume the existence of the presumed fact unless and until evidence is introduced to support a finding of its nonexistence — in which event the trier of fact determines the existence or nonexistence of the fact from the evidence and without regard to the presumption."  (Evid. Code, § 604.)  In other words, when met with "contradictory evidence," the presumption "disappears."  (*Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416, 421.)

"In everyday usage of the phrase, 'to drive a vehicle,' is understood as requiring evidence of volitional movement of a vehicle" based on numerous dictionary definitions for "drive" that required movement.  (*Mercer v. Department of Motor Vehicles* (1991) 53 Cal.3d 753, 763 & fn. 5.)  As previously stated, "an inference may be drawn only if the 'proposed conclusion is a reasonable, logical, and nonspeculative deduction from the facts proved.' [Citation.]"  (*Glatman, supra,* 146 Cal.App.4th at p. 705.)  The element of

20

driving can be established through circumstantial evidence. (*People v. Garcia* (1989) 214 Cal.App.3d Supp. 1, 4.)

*People v. Wilson* (1985) 176 Cal.App.3d. Supp. 1 is instructive as to whether defendant drove and parked his vehicle blocking the Valley Animal Clinic driveway. In that case, the defendant was found behind the wheel of his vehicle asleep, with the engine running, parked on the freeway. The back portion of his car was partially blocking one of the lanes of the freeway. (*Id*. at p. 3.) When the defendant exited the car, he had slurred speech and had bloodshot, watery eyes. The defendant admitted drinking earlier in the night but claimed he had stopped. Only after his car overheated on the freeway, did he start to drink more beers but never drove after drinking these beers. (*Id.* at pp. 4-5.) The defendant contended on appeal to the superior court that the evidence was insufficient to support that he had been driving. The court found there was circumstantial evidence that supported that he had been driving. This evidence included that parking on the freeway in lanes "was not a normal parking place or position for a vehicle to be stopped" and the "vehicle did not simply materialize at that location. Obviously someone drove it there." (*Id.* at p. 8.) The court also relied on the fact that defendant was the driver because he was the sole occupant in the car; he never said anyone else had driven the vehicle; and the vehicle belonged to the defendant. Finally, the court found there was abundant evidence that defendant had been drinking prior to his stopping the vehicle on the freeway. (*Ibid*.)

Here, the evidence established that a citizen reported that "the person in the vehicle had been in the truck for about an hour and told the reporting person he was

taking a nap."[8]  Officer Mabanag was called to investigate the report of the person

sleeping in his car.  When he arrived, Gilsdorf was asleep behind the wheel and the

engine was running.  He was blocking the driveway of a business.  There was no

affirmative evidence that someone else drove Gilsdorf to the location and parked him in

this position which was not "normal."  (*People v. Wilson, supra,* 176 Cal.App.4th at p. 8.)

Gilsdorf admitted he had been drinking beers in Indio and Cathedral City and provided

no explanation as to how he got to those locations.  It was reasonable to infer that

Gilsdorf drove to the Valley Animal Clinic and parked; his car did not "simply

materialize" at the location.  (*Ibid.*)

Moreover, for purposes of the three-hour presumption of Vehicle Code section

23152, subdivision (b), the evidence presented established the chemical test was

completed within three hours of driving.

In *Bell, supra,* 11 Cal.App.4th 304, the defendant argued the presumption under

Vehicle Code section 23152, subdivision (b) had not been established.  There, the

statements of the officers provided that the officer observed the defendant leaving a club

and drive with the radio at an illegal level.  The statements also supported that he was

---

[8]  Here the citizen's report was hearsay without an exception which is required upon objection pursuant to Government Code section 11513, subdivision (d). (See *Lake v. Reed, supra,* 16 Cal.4th at p. 461 [witness reports are hearsay but could be considered to explain other properly admitted, e.g. non-hearsay, evidence that proved a fact.)  However, Gilsdorf has never argued that the citizen report was hearsay.  Rather, he argued at the hearing that the entire unsworn police report was hearsay and did not apply under the exception in Evidence Code section 1280 due to its untimeliness.  On appeal he has not made an argument that the report he had been in his truck for one hour was hearsay.  As such, he did not make a timely objection as required by Government Code section 11513, subdivision (d).

arrested at 2:05 a.m., and the intoxilyzer test was administered at 2:36 a.m.  The defendant argued there was no evidence establishing the time between the officer first observing him leave the club and the time he was arrested to support the three-hour presumption.  (*Bell,* at p. 314.)  The appellate court rejected this argument, finding that "in order to find the presumption inapplicable, we must conclude that the officers waited almost two and one-half hours after observing [defendant] leave the club and drive . . . Such an inference would not be reasonable or legitimate.  [Citation.]" (*Bell*, at pp. 314-315.)

Here, as stated, the citizen reported that Gilsdorf was blocking the driveway of a business and had been at the location for about one hour.  The exact time that the report was received was not conclusively established.  However, it was reasonable to infer from the evidence that it was a short period of time between the time that the call was received and the time that Officer Mabanag was dispatched to the scene at 12:44 a.m.  Since the vehicle was blocking the driveway of a business establishment and Gilsdorf was passed out, it is reasonable to infer that once the call was received, the dispatcher immediately contacted Officer Mabanag to respond.  (See Evid. Code, § 664 [public agencies are presumed to regularly perform their official duty].)  It was not reasonable to infer that the dispatcher waited for over an hour to dispatch Officer Mabanag.  (*Bell, supra,* 11 Cal.App.4th at pp. 314-315.)  Since the citizen reported Gilsdorf had been at the location for one hour, Office Mabanag was dispatched at 12:44 a.m., and the chemical test was taken at 1:51 a.m., this was sufficient evidence that the chemical test was administered within three hours of Gilsdorf driving.

23

Based on the foregoing evidence, the Department established the presumption that Gilsdorf had been driving his vehicle within three hours of the chemical test. His BAC was 0.17 percent, far exceeding the required 0.08 percent or more required at the time of driving. Once the presumption was established, Gilsdorf had to present evidence to rebut the presumption. (*Manriquez v. Gourley, supra,* 105 Cal.App.4th at p. 1233.) He presented no evidence rebutting the presumption. As such, the finding of the hearing officer that Gilsdorf was driving with a BAC over 0.08 percent was supported by the evidence.

## VI

## DISPOSITION

The judgment is affirmed. The Department shall recover its costs on appeal. (Cal. Rules of Court, rule 8.891(a)(1).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI
Acting P. J.

We concur:

KING
J.

MILLER
J.

24